P. P. MAST & CO. v. SUPERIOR DRILL CO.

(Circuit Court of Appeals, Sixth Circuit.    May 16, 1907.)

No. 1,625.

1. APPEAL—ASSIGNMENTS OF ERROR—TIME FOR FILING.
Under rule 11 of the Circuit Courts of Appeals (150 Fed. xxvii, 18 C. C. A. xxvii), which requires an assignment of errors to be filed with the clerk of the court below with the petition for an appeal, and provides that no appeal shall be allowed until such assignment of errors shall have been filed, additional assignments of error filed after an appeal has been perfected by the service of citation, by which the court below lost jurisdiction, constitute no part of the record, and will not be considered on the appeal.
[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, § 3044.]

2. PATENTS—SUIT FOR INFRINGEMENT—ACCOUNTING.
A court has no power to award an arbitrary sum as profits or damages recoverable for the infringement of a patent, not based upon any finding made by the master on the accounting nor upon the evidence.
[Ed. Note.—Accounting by infringer for profits, see note to Breckill v. Mayor, etc., of City of New York, 50 C. C. A. 8.]

3. APPEAL AND ERROR—ASSIGNMENTS OF ERROR—SUFFICIENCY.
General assignments of error that the court erred in sustaining the report of a master, or in overruling the exceptions thereto, which were numerous, or in awarding any substantial damages thereon, do not comply with the requirement of rule 11 of the Circuit Courts of Appeals (150 Fed. xxvii, 118 C. C. A. xxvii), that such assignments "shall set out separately and particularly each error asserted and intended to be urged," and will not be considered.
[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, §§ 2997-3001.]

4. SAME—REVIEW—ERRORS NOT ASSIGNED.
The purpose of the provision of rule 11 of the Circuit Courts of Appeals (150 Fed. xxvii, 118 C. C. A. xxvii), that "the court at its option may notice a plain error not assigned," is to prevent the miscarriage of justice from oversight, and it does not intend that the court is to sift the record and deal with questions of small importance, but only that it may notice errors which are obvious and of a controlling character.
[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, §§ 2968-2982.]

5. PATENTS—INFRINGEMENT—REPORT OF MASTER ON ACCOUNTING.
Where, on an accounting before a master for infringement of a patent, evidence is introduced both as to damages and profits, it is proper for

the master to report his findings and conclusions upon each line of evidence separately.

6. SAME—EVIDENCE TO ESTABLISH DAMAGES.

On an accounting before a master for damages for infringement of a patent, evidence of license contracts made between complainant and other responsible parties, by which they were to pay a royalty for the use of the patented device, is admissible, and if the contracts were made in good faith, and the royalties stipulated for are so far uniform as to establish a reasonably definite basis of value, they may properly be taken as fixing the measure of damages, even though the contracts were made pending the suit, where infringement by the defendant was continuing.

7. SAME—EVIDENCE TO ESTABLISH PROFITS.

On an accounting before a master in respect to profits made by defendant from the infringement of a patent, where both complainant and defendant were large manufacturers of the articles to which the patent related and located in the same city, evidence of the cost of manufacture to complainant in its factory is admissible, and if not controverted, and in the absence of any evidence of the actual cost of manufacture to defendant, may be taken as establishing such cost.

8. SAME.

On an accounting as to profits, made by an infringer of a patent, covering a part of a machine which had practically superseded all devices to produce a similar result previously in use, it was proper, in determining the cost of manufacture, to compare the cost of making the machine with the patented device with that of making the one which was the nearest approach to it in the market and in common use.

Appeals from the Circuit Court of the United States for the Western Division of the Southern District of Ohio.

H. A. Toulmin, for appellant.

Border Bowman, for appellee.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge. This cause came here on a former occasion on an appeal of the present appellant from a decree of the court below declaring the validity of the first, second, and third claims of letters patent No. 557,868, granted to F. R. Packham for an improvement in the construction of disk grain drills, more particularly in the provision of a furrow opener therefor, the infringement thereof by the appellant, and ordering a perpetual injunction and a reference to a master to ascertain and report the profits and damages. Upon full consideration of the record on that appeal, this court affirmed the decree of the Circuit Court in all particulars and directed further proceedings thereon. 115 Fed. 886, 53 C. C. A. 36. On the reception of our mandate, that court, upon the suggestion of counsel for both parties, appointed B. R. Cowen, Esq., as master to state and report an account. The evidence in the former record was used on the reference. The new proofs submitted to him proceeded upon two distinct lines; one directed to the ascertainment of damages, estimated in the main upon royalties received upon licenses to other parties, and the other to the ascertainment of the profits realized by the defendant (below), based upon sales made by the defendant and the cost of production.

The master, in dealing with the subjects of the reference, observed the same distinction. He summed up his conclusions thereon as follows:

"Findings: I find:

"(1) That the infringement by defendant of the claims Nos. 1, 2 and 3 of the Packham patent No. 557,868, beginning in 1898, and continuing until 1902, was deliberate, wanton and continuous.

"(2) That a license fee of 25 cents per furrow opener was established by complainant, which is adopted by the master as the measure of damages.

"(2) That there is due complainant from defendant, on account of said infringement, under the standard adopted in the second finding above:

On 96,951 furrow openers at 25 cents...................$24,237 75
Interest .......................................  ........  5,460 78
                                                            ————————
    Total ..........................................$29,698 53

"As an alternative to the third finding as above, in case the court should overrule the conclusion as to there being an established license fee, I find:

"(4) That the profit on the 10,236 single-disk drills carrying the infringed device was $23,031.00. Interest to September 1, 1905, $5,290.65. Total $28,321.65."

To this report, counsel for the defendant filed 26 exceptions. These exceptions were overruled by the master, as was also an exception by counsel for the complainant wherein the latter claimed to recover "the entire profits made by the defendant upon the complete drill, $100,562.22 and interest"; that is, as we understand, the profits of the business of making and selling the drills which embodied the Packham invention.

Before the case came on for final hearing, the court on motion of the defendant referred the case back to "take proof as to the entire or partial abandonment by complainant of the disk furrow opener covered by the patent involved herein, and the substitution therefor of another and different type of device for the same purpose." The proof thereupon offered by the defendant consisted of trade circulars and advertisements of the complainant dated December, 1905, and after, and certain machines made by complainant in 1906 showing an improved device for the purpose of a furrow opener, in consequence of which the Packham furrow opener had to some extent been superseded. The master reported that he was unable to discover how the later improvement should affect the consequences of the infringement from 1898 to 1902 and adhered to his former report. It is manifest that his conclusion upon the matter referred back to him was correct.

Upon final hearing the court filed a written opinion wherein, after making some general observations commendatory of the care and discrimination shown by the master's report and concerning the difficulty which usually prevents any exact adjustment of profits and damages in such cases, he concluded as follows:

"In order to meet everything which I think could be reasonably said on the score of the profits, or license fees, not being properly established as a charge against the defendant on account of the speculative feature, or any other objection urged, I have concluded to reduce the amount reported against the defendant by the master in his findings to the even sum of $18,000, and with this reduction or modification to overrule all objections to the master's findings and report, and to allow a decree for this sum, together with the cost of the cause, including the compensation to the special master, which, if not agreed

upon with him, will be fixed by the court upon further notice and further attention to the case."

Thereupon the court, on July 12, 1906, entered a decree overruling all the exceptions to the master's findings and report, and adjudging that the complainant recover the sum of $18,000 and costs, including compensation to the master in the sum of $500. On September 1st following, the defendant filed a prayer for an appeal and an assignment of errors for the following reasons:

"(1) That the Circuit Court erred in finding an arbitrary sum and decreeing its payment by defendant.

"(2) That the Circuit Court erred in sustaining the master's report to any extent, and in not overruling it altogether.

"(3) That the Circuit Court erred in decreeing the payment of any sum by defendant, and in not finding for nominal damages only.

"(4) That the Circuit Court erred in overruling to the extent that it did the exceptions filed by defendant, and in not wholly sustaining said exceptions.

"(5) That the Circuit Court erred in holding said exceptions to be technical.

"(6) That the Circuit Court erred in awarding costs and the master's fee against defendant."

The appeal was allowed, the bond approved and filed, and a citation issued on the same day. Service of the citation was acknowledged on September 6th. Then on September 8th counsel for the appellant filed in the court below additional assignments of error as follows:

"(7) That the Circuit Court erred in not sustaining the objections of record to the evidence adduced by complainant.

"(8) That the Circuit Court erred in not sustaining the objection that the alleged licenses and the testimony relating thereto were incompetent, because the licenses are of date subsequent to the commencement of the infringement.

"(9) That the Circuit Court erred in not sustaining the objection that the testimony relating to the cost of labor and material in defendant's furrow openers was incompetent and irrelevant."

The complainant also appealed, filing the following assignments of errors:

"(1) That the Circuit Court erred in setting aside the master's finding, the substance of which was that the evidence of complainant's license fee of 25 cents per furrow opener was properly introduced to show the value of the patented device, which, together with the evidence of the profits made by defendants over the device commonly used prior to the introduction of the patented device, was sufficient to warrant a recovery on that basis to the amount of $29,698.53.

"(2) That the Circuit Court erred in setting aside and refusing to confirm the master's finding, the substance of which was that the disk shield device should be compared with the device most nearly approaching the patented device open to the public and commonly used prior to the patent, and that the hoe drill fulfilled these requirements, and that it was proper to compare defendant's profits made on the disk shield device with the said hoe device.

"(3) That the Circuit Court erred in not accepting the master's finding, viz., that the single disk shield device should properly be compared with the hoe device which it supplanted, in order to ascertain the profit due to the patented feature, and that defendant's profits figured on said basis amounted to $23,031.00, which sum at least should be awarded complainant.

"(4) That the Circuit Court erred as matter of law in not allowing the Superior Drill Company that part of the profits made by P. P. Mast & Co. on the single disk drill, which were proved to be due to the patented features in suit, amounting to $2.25 per machine, which would make the judgment $23,031.00 with interest from October 18, 1905."

And this cross-appeal has been perfected.

The first question with which we are required to deal is with regard to the status of the seventh, eighth, and ninth assignments of error. Counsel for complainant insists that these assignments are not properly before us because not seasonably filed. As is seen from the foregoing statement, all the proceedings for taking the appeal were perfected by the service of the citation on September 6th, and these later assignments of error were filed in the court below September 8th. Rule 11 of this court (150 Fed. xxvii, 118 C. C. A. xxvii) requires that the appellant shall file with the clerk of the court below with the petition for appeal an assignment of the errors asserted and intended to be urged, and that no appeal shall be allowed until such assignment of errors shall have been filed. The rule was prescribed under the second section of the act creating the Courts of Appeals (Act March 3, 1891, c. 517, 26 Stat. 826 [U. S. Comp. St. 1901, p. 547]), and has the force of law. The S. S. Osborne, 105 U. S. 447, 450, 26 L. Ed. 1065.

It is the same in all the circuits. The assignment of errors is to be filed in the court below before that court loses jurisdiction, and is a necessary condition to the allowance of the appeal and the transfer of the jurisdiction to the Court of Appeals. It follows that, when these later assignments of error were filed, the case was no longer pending in the court below, and the filing them there was a futile act. They constitute no part of the record. That consists of the proceedings of the court below as they existed at the time the appeal was taken. It was held, in Mutual Life Ins. Co. v. Conoley, 63 Fed. 180, 11 C. C. A. 116, by the Circuit Court of Appeals for the Fourth Circuit, that assignments of error not filed in the trial court by the plaintiff in error or the appellant at the time he files his petition for writ of error or appeal, as required by rule 11, will not be considered on appeal, even though the judge at the time of allowing the appeal granted leave to file them subsequently. Similar decisions have been made in other circuits. Frame v. Portland Gold Min. Co., 108 Fed. 750, 47 C. C. A. 664; Lockman v. Lang, 128 Fed. 279, 62 C. C. A. 550; United States v. Goodrich, 54 Fed. 21, 4 C. C. A. 160. We think the objection must prevail.

The first assignment of error on the appeal of the defendant below is that the Circuit Court erred in finding an arbitrary sum and decreeing its payment by defendant. We think this assignment must be sustained. The court abruptly departed from the orderly course of procedure. The decree did not rest upon any finding by the master, notwithstanding the court overruled all exceptions to it. Nor is it supported by any evidence to be found in the record. It was for an arbitrary sum quite distinct from either of the results which the evidence had any tendency to prove, and the court was not at liberty to pronounce a decree at discretion. Neither profits nor damages can be awarded without proof, and that must be something tangible and sufficient to lead to some definite result. We appreciate the embarrassment and difficulties which attend these inquiries, and to which the learned judge referred; but that does not justify a departure from the rules of law governing the subject. Corporation of New York

154 F.—4

v. Ransom, 23 How. (U. S.) 487, 16 L. Ed. 515; Philp v. Nock, 17 Wall. (U. S.) 460, 21 L. Ed. 679. The decree, therefore, in so far as it adjudges a recovery by the plaintiff of the sum of $18,000, will be reversed.

The court overruled the exceptions to the master's report, being of opinion, as the learned judge states, that they did not go to the justice or equity of the case. The second, third, fourth, and fifth assignments of error filed by the appellant (defendant below) relate to the action of the court upon these exceptions. In behalf of the appellee, counsel make the objection that these assignments are too vague and indefinite, that they do not comply with the rule of this court, and ought not to be considered; and we are of opinion that the objection is well taken. There were 26 in number of the exceptions to the master's report filed by defendant below. Rule 11 requires that the appellant, in assigning the errors of which he complains, "shall set out separately and particularly each error asserted and intended to be urged." This rule was prescribed as well for the benefit of the adverse party in preparing his case for hearing as for the convenience of the court in its examination of the record and disposition of the questions presented. None of these requirements are met by these assignments. Thus, the second assignment is that "the court erred in sustaining the master's report to any extent, and in not overruling it altogether." This depended on the question whether the exceptions to it were well taken or not, and would require the court to examine each and all of them to find which were material and so far vital that it should have influenced the decree and which should be held unimportant or frivolous, as some of them would seem to have been; and, to know what foundation they severally had, the court would be required to search the record to find the evidence or particular proceeding to which they related. Each of the exceptions was several and complete, and an assignment of errors based upon the overruling of them should have been aimed at such of them as the party intended to rely upon "separately and particularly," as the rule is.

The third assignment is that the court erred in decreeing the payment of any sum by defendant beyond nominal damages. This also presents no distinct and separate question, but is the result of the solution of many to which the court is remitted; more particularly to the master's report and the exceptions. Guided by this assignment, where shall we begin? It is manifest that we must read the whole record of the proceedings before the master and the court subsequent to the original decree to respond to the assignment and form our conclusion. It followed from our former decision that the complainant was entitled to nominal damages at least, and the whole of the subsequent inquiry was whether it was entitled to substantial damages. The exceptions being overruled, the normal consequence would be a decree based on the report.

The fourth assignment, that the court erred in overruling the exceptions filed by the defendant to the extent that it did, and in not wholly sustaining said exceptions, points to no particular error, but to a general conclusion, and is subject to the same criticism as have been made upon the second and third. The decisions upon this provi-

sion of rule 11 in the several Courts of Appeals are very numerous. Among them are Deering Harvester Co. v. Kelly, 103 Fed. 261, 43 C. C. A. 225; Rhode Island Locomotive Works v. Continental Trust Co., 108 Fed. 5, 9, 47 C. C. A. 147; Chandler v. Pomeroy, 96 Fed. 156, 37 C. C. A. 430; McFarlane v. Golling, 76 Fed. 23, 22 C. C. A. 23; Smith v. Hopkins, 120 Fed. 921, 57 C. C. A. 193; United States v. Lee Yen Tai, 113 Fed. 465, 51 C. C. A. 299.

The fifth assignment is that the court erred in holding said exceptions to be technical. This is founded upon an expression in the opinion of the judge, and not upon anything contained in the decree, and indeed would in any case not be a proper subject of an assignment of error.

Rule 11, above referred to, declares that "errors not assigned according to this rule will be disregarded"; but it is added that "the court at its option may notice a plain error not assigned." And counsel for the appellant (defendant below) asks us to exercise this option in its favor and take cognizance of some matters which he thinks are plain errors in the record before us, referring to several cases where we have exercised this privilege. In the circumstances, although we are loath, at this late day, to longer indulge the disregard of a wholesome rule, the court is inclined to inquire whether there is in the record any error so plain that the court ought to take notice of it. It is manifest, however, that the rule does not intend that we are to sift the record and deal with questions which are of small importance, but only to notice errors which are obvious upon inspection and of a controlling character. The underlying purpose of this reservation in the rule is to prevent the miscarriage of justice from oversight.

We observe that the master who conducted the reference was a man suggested by both parties, doubtless from his long experience and recognized ability; that, as before stated, the testimony on the reference was directed to both lines for recovery, namely, profits on the one and damages on the other; and that the master followed this scheme, not for the purpose of duplicating the damages (using this expression in its wider sense), but because, in the well-understood difficulties of making sufficient proof to satisfy the law under either head, the complainant might be able to succeed on one line, even if he should fail on the other. The master's report shows that, though he was impressed that the proof was sufficient to make out a case for damages, he thought it expedient to report his conclusions upon the proof offered in support of the claim for profits, to the end that the court should have the data for a decree upon the adoption of either basis as the court should deem proper. Counsel for appellant objects that it was improper and irregular for the master to report in this alternative way, and that he should have reported the one thing or the other as his definite conclusion; but we are unable to appreciate the force of the objection. On the contrary, we think the course pursued by the master was well advised, as conducive to a proper result.

The proof of damages submitted to the master consisted of licenses granted to a large proportion of the leading manufacturers and large dealers in grain drills, which in general included only the Packham patent, on which royalties substantially uniform were agreed to be

paid, and it was upon the basis of such royalties that the master reckoned the damages. The principal objection made by the defendant to this proof was that these licenses were made after this suit was begun and while it was pending. This was the fact; but some further facts should be noted in this connection. Contemporaneously with the running of these licenses and the pending of this suit, the defendant was continuing the infringement of the Packham patent. The licenses recited the pending of the litigation over that patent, and stipulated that, if it should be adjudged invalid, the royalties should cease or be remitted. The licensees were all substantial parties, and their responsibility is not questioned. Whether they had all paid the royalties does not appear. In some of the decisions upon this subject, language has been used of a character which, if construed without reference to the facts of the cases in which it was expressed, would be wide enough to support the objection above stated; but the reason which forms the ground on which evidence of royalties paid on licenses is received as a basis on which to estimate damages is that where they are fully stipulated for by a large number of well-informed business men, and are so far uniform as to establish a reasonably definite basis of value, it is as good a test of value of the use of the invention as can well be supplied, for it cannot be supposed that business men would generally pay more for a thing to use in their lines of business than it was reasonably worth. Of course, if the circumstances were such as to give fair room for the suspicion that the bargain was collusive, the evidence derived from such royalties should be regarded as unreliable. In the present case, so far as we can see, there is no room for suspecting collusion, and the nature of the contracts in the circumstances would seem to repel any doubt of their good faith. Nor can we perceive any reason why the evidence in such cases should be hedged about with suspicions and artificial limitations not felt or imposed in dealing with business transactions generally. But there are so many dicta which seem to recognize the doctrine for which counsel for the appellant contends that we think it best to surrender, for the present, our strong impression that there was sufficient evidence before the master to have justified him in his finding in regard to the damages which the complainant was entitled to recover. We are the more disposed to do this for the reason that we think that the alternative finding of the master rests on more secure grounds, and the difference in results is not very substantial In proof of the profits realized by the defendant, evidence was taken to show the cost and selling prices respectively of drills containing the Packham patent. This was done in respect to the cost by evidence of the cost of the special parts of hoe drills peculiar to those drills and of the increased cost of the corresponding parts of drills containing the Packham invention, and evidence tending to show that hoe drills were the kind in most general use before the date of Packham's patent. The selling price was proved by evidence of the increased price at which the defendant sold the infringing drills containing the Packham invention, over the price at which the defendant and others sold the hoe drills of corresponding capacity; that is, having the like number of seeding tubes to which the special parts of all grain drills are

attached, and the other parts of hoe drills and disk drills being alike.

It is fairly inferable that the incidental expenses of manufacturing and selling the two kinds of machines would be substantially the same. If there was any difference, it would be in favor of the machine most easily sold and in greater numbers. In a case where the whole profits of the business are sought to be recovered, this item might be worthy of more consideration. From this evidence the master found that the defendant's profit on each drill containing the furrow opener of the Packham patent sold by it was $2.25, and the defendant admitted the sale of 10,236 of such drills. The master therefore reported the profits at $23,031, to which he added interest from the expiration of each year of the sales to September 1, 1905; the whole sum being $28,321.65. Our own impression from the evidence is that this was a very moderate sum, and that a larger sum would have been justified.

The witness by whom the comparative cost of the hoe drill attachments and the furrow opener attachments was proved produced a schedule showing a detailed statement of the items going into each. An objection was made to this testimony after it was given "in part as stating conclusions, while, as to the tables of cost of production given above, they object to them as a mere prearranged calculation incompetent for any purpose in this case." The witness was the president of the complainant, and the cost estimate was one made by him as the result of his experience in his own factory; and the principal objection now urged is that an estimate of what the cost would be at the complainant's factory is no criterion of the cost in defendant's factory. Perhaps it would not be the best criterion if the actual cost to defendant had been shown; but the defendant did not offer to prove that, although the proof was under its own control, nor did it offer any evidence to prove that the estimate given by the complainant's witness was incorrect, nor raise any such point at the taking of the testimony by a proper objection. Besides, these parties are both large concerns doing a similar business at the same place. Under such circumstances, we think the proof was admissible. At all events, it is not open to an objection not taken until after the testimony was given.

The only other objection that we shall notice is that the comparison of cost of production of the Packham furrow opener with that of the cost of the hoe drill was improper, "because," as counsel for the defendant says, "the law requires that the two things to be compared must be adequate to produce an equally beneficial result." This proposition seems to have been borrowed from cases where the circumstances were such as to make such a comparison possible. It has no application to a case such as this. There was no such other thing to compare the Packham furrow opener with. Other disk drills had been almost completely superseded by it, and the furrow opener, which was the beneficial feature of the patent, was altogether new. The comparison was in fact made with the nearest approach to the Packham invention in the market and in common use. It would fulfill the requirement of the counsel's proposition if we substitute "a similar result" for "an equally beneficial result," for the similar result would be in the fact that the two machines were each adapted to sowing and covering the

seed in drills, and the rule above stated, to be applicable to such a case as this, must be modified to suit the different circumstances.

In this instance the master followed such precedents as Suffolk Company v. Hayden, 3 Wall. (U. S.) 315, 18 L. Ed. 76, where the patent was for an improvement in cotton cleaners, which consisted in the prolongation of the trunk in the machine. Upon the accounting for the infringement, the court below permitted evidence as to the advantages of the improvement over the previous methods of cleaning cotton. This course was approved, and Mr. Justice Nelson said:

"There being no established patent or license fee in the case, in order to get at a fair measure of damages, or even an approximation to it, general evidence must necessarily be resorted to; and what evidence could be more appropriate and pertinent than that of the utility and advantage of the invention over the old modes or devices that had been used for working out similar results? With a knowledge of these benefits to the persons who have used the invention, and the extent of the use by the infringer, a jury will be in possession of material and controlling facts that may enable them, in the exercise of a sound judgment, to ascertain the damages, or, in other words, the loss to the patentee or owner by the piracy, instead of the purchase of the use of the invention."

In the case of the Cawood Patent, 94 U. S. 695, 24 L. Ed. 238, the patent was for an improvement of the anvil or swedge-block for mending railroad rails. The former method had been by mending them on an anvil. The Supreme Court held that the profits which should be recovered for the infringement were the difference between the cost of mending by the old method and the cost of mending by the patented device.

In Sessions v. Romadka, 145 U. S. 29, 12 Sup. Ct. 799, 36 L. Ed. 609, a very instructive case, the improvement was for a trunk fastening consisting of a fixed tang and a spring-pressed catch. The former fastening consisted of straps and dowels. Upon the accounting, the master reported the profits upon the basis of a comparison of the cost of making and applying the strap and dowels and the cost of making and applying the fastenings of the infringed patent. An exception to this method of estimating the profits was sustained by the lower court, and a decree for nominal damages was entered. This decree was reversed by the Supreme Court, and the report of the master approved. In the opinion of the court by Mr. Justice Brown there is an extended discussion of the subject, in which the authorities are collected. It is too long to be canvassed in detail here.

The manager of the defendant company in his testimony before the master said that:

"No profit, or separate profit, gain, or advantage has been made or derived from the Packham features of said grain drill furrow opener by said P. P. Mast & Co."

The disingenuousness of this statement is demonstrated by the master in his report when he says:

"Yet the testimony shows that defendant began its infringement in 1898, at which time the trade in the Packham patent was well established; that President Mast, of defendant company, having purchased one of complainant's drills carrying the Packham single-disk furrow opener, the same was deliberately copied and put upon the market by defendant; that defendant was sued for infringement of said patent, June 16, 1898; that in October, 1901,

it gave a supersedeas bond and continued that infringement up to and during 1902; that its president, P. P. Mast, conceded that the Packham single-disk furrow opener sold the drills and made it necessary for his company to make a similar drill.

"There is abundant uncontradicted testimony both on the statement of dealers and in the experience of manufacurers that the trade went largely to the Packham single-disk drill furrow opener on its introduction, and that the sale of the machines theretofore in use fell off in like proportion; that farmers owning and using good hoe and shoe drills cast them aside, 'or sold them for most anything they could get,' and bought the Packham single-disk drill; that canvassing agents in many sections could not sell the hoe and shoe drill after the introduction of the Packham single-disk drill, though the former were exactly similar in all respects to the latter, save in the single feature of the Packham single-disk furrow opener; and that during the infringing period defendant made and shipped to the trade 104,557 single-disk furrow openers, of which 96,951 were actually sold and not returned."

The complainant called as a witness the manager of the jobbing and sales department of the defendant, and endeavored to get some evidence to show the prices at which the defendant had sold grain drills, among others the drills containing the Packham invention; but the effort was fruitless, and no fact of any importance could be elicited. The testimony of these two witnesses shows how hopeless the prospect of proving the facts would have been, if the complainant had been obliged to depend on the evidence to be obtained from the defendant's officers in regard to the profits which it was entitled to recover.

It is contended for the appellant that the master should have made some apportionment in his estimate of profits to other features of merit in the drills sold by the defendant. No doubt, if the defendant could have satisfied the master that there were some other special features not common to grain drills, which contributed to the profits, it would have been his duty to make an apportionment, and award to the Packham patent only such part of the profits as the proof would justify; but there was no factor brought forward which was entitled to share in the profits the master was inquiring about. As we held in a recent decision in the case of Canda v. Michigan Malleable Iron Co., 152 Fed. 178, following Elizabeth v. Pavement Co., 97 U. S. 126, 24 L. Ed. 1000, the burden was on the defendant to prove that there existed such a factor; and see, to the same effect, Sayre v. Scott, 55 Fed. 971, 3 U. S. App. 643, 5 C. C. A. 366; Tuttle v. Claflin, 76 Fed. 227, 45 U. S. App. 105, 22 C. C. A. 138. When some other invention is employed and contributes to the profits, the infringer is liable to that party also, and he is entitled to be guarded against being compelled to pay two different parties for the same thing; but that difficulty does not arise when only things open to public use are used in the patented combination. The master was not proceeding upon the basis of ascertaining the profits which the defendant made in its business of selling drills containing the Packham invention, but only the profits gained from the use of that invention in the making and selling the drills. He overruled the contention of the complainant that it should recover the profits of the defendant's business in making and selling the drills. This was the question which was presented in Garretson v. Clark, 111 U. S. 120, 4 Sup. Ct. 291, 28 L. Ed. 371, where the court denied the right to recover the profits on sales of the articles,

but recognized the right to recover to the extent that the invention enhanced the profits of the sales.

If, as the master found, the infringement was "deliberate, wanton, and continuous," and the profits which the defendant made in using the complainant's patent were so confused in the profits in making and selling the machines that the former could not be ascertained, it may well be doubted whether the complainant was not entitled to recover the whole profits. There is much apparent discord in the decisions upon the question of the proper method of determining the profits and damages which may be recovered on account of the infringement of a patent. Probably it would be possible to reconcile the most of them by carefully attending to the different facts upon which the decisions were rendered. In recent times the case most frequently referred to is Garretson v. Clark. In that case the patent was for an improvement in the construction of a mop head, and the question came up on the accounting for profits made by the infringer. The facts are more fully stated in Garretson v. Clark, 15 Blatchf. (U. S.) 70, Fed. Cas. No. 5,248, where Mr. Justice Blatchford laid down the rules approved by the Supreme Court on the appeal, and so often quoted in subsequent cases. The only proof which had been laid before the master was of the profit made by the defendant in selling mop handles which contained the improvement of the handle. The master in his report said:

"There has been no evidence before me that would warrant a finding that the whole success of the mops in question, either of the defendants' or of the complainant's manufacture, was due to the peculiar construction described in the claims of the patents above referred to. Nor could I find, from the evidence, that that peculiar construction constituted the sole feature that made the mops a success in the market. Such finding would be required to sustain the complainant's theory of damages."

And, again:

"The complainant's invention has peculiar and distinctive features in the form of construction and operation referred to, but these features alone do not constitute a mop, and there were many valuable mops in the market before these features were at all introduced. The evidence shows many such mops as made in the past, and even as made in the present, for the defendants appear to be now selling with success a mop not claimed to infringe the complainant's invention."

No one could doubt that the master was perfectly right. In confirming the report, the learned judge laid down certain broad and general propositions, as follows:

"The patentee must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative; or he must show, by equally reliable and satisfactory evidence, that the profits and damages are to be calculated on the whole machine, for the reason that the entire value of the whole machine, as a marketable article, is properly and legally attributable to the patented feature."

These propositions were inspired by the facts of that case, and are undoubtedly to be applied to every case when the facts fit the measure of either of the bases on which the law was then laid down, for their approval by the Supreme Court makes them of paramount authority;

but it has frequently happened that the facts of cases, which might in a general way seem to invite the application of those rules, yet present other grounds which would prevent their application without doing great injustice, and it would seem that other conditions exist if the infringer's conduct has been of the character which the master's report attributes to it, and would furnish ground for the application of the rule laid down by Chancellor Kent in Hart v. Ten Eyck, 2 Johns. Ch. (N. Y.) 62, 108, where an account was being taken. "If," said he, "a party having charge of the property of others so confounds it with his own that the line of distinction cannot be traced, all the inconvenience of the confusion is thrown upon the party who produces it, and it is for him to distinguish his own property, or lose it." Obviously, the rule would not be less applicable if the party acquired the possession by a wrongful dispossession of the owner. In the cases of Smith v. Township of Au Gres, 150 Fed. 257, and Smith v. Mottley, 150 Fed. 266, we accepted and applied this rule in fixing the liability for the wrongful confusion by one of the property of another with his own. But we infer from the record that the complainant acquiesced in the ruling of the master in this regard, and we do not pursue the matter further. We have referred to it as one of the reasons which satisfy us that the defendant would suffer no injustice from a decree for a smaller sum than the amount with which it might properly have been charged.

We have said all that is necessary in regard to the complainant's exceptions in discussing the principal points of the controversy. In our former opinion we expressed our conviction that the invention of Packham was a meritorious one; and the record now before us confirms us in the belief that it contributed to the organization of drills of this class the element which made them highly successful. It was natural that it should supersede the old structures of its class and render them practically unsalable. It seems, also, from what now appears, that in a large part of the country it superseded to a great extent all other classes of drills, during the period of the defendant's infringement. The defendant's conduct in seizing and stubbornly hanging onto the subject of the patent and the large number of sales it made is persuasive evidence of its merit.

The foregoing are the large questions in the case, and we perceive no such substantial error in the master's proceedings as to require, for the sake of doing justice, the rejection of his report. And upon the whole we are satisfied that the defendant, at least, has no just ground for complaint, if a decree be entered for the sum indicated by the master as representing the profits made by the defendant, which is the sum of $23,031 with interest on that sum from the filing of the master's report on October 18, 1905, to the date of the entry of the decree, with costs. The fourth assignment of error on the cross-appeal of the appellee is sustained, and the finding of the master therein mentioned is approved to the extent indicated in this assignment of error. The appellant, who was the defendant below, should be charged with the costs of this appeal.

The court below will enter a decree in accordance with the foregoing opinion.