## DALTON v. STOUT et al.

Decided August 19, 1935.

No. 5620.   Rehearing Denied Sept. 13, 1935.   (48 P. [2d] 425.)

*Brockbank & Pope,* of Provo, for appellants.
*Orval Hafen,* of St. George, for respondents.

MOFFAT, Justice.

This action relates to a small tract of land in Utah's Dixie where grapes grow abundantly and sunshine is seldom interrupted by shadow.   This action is one of ancient vintage, having been instituted in the district court of the Fifth judicial district as long ago as May 20, 1924.   Divers and sundry reasons have contributed to the delay.   The file reached this court October 5, 1934, or more than ten years after the case was commenced.

The suit was instituted for the purpose of enforcing the equitable remedy of specific performance of a contract, entered into in the spring of 1910.   There was also included in the complaint a cause of action to quiet title to the same property under a claim of title by adverse possession.   Both causes of action seek to establish title to lots 1 and 5 of block

3 and 1, 2, and 3 of block 4, Rockville Townsite Survey, Washington county, Utah. The contract was executed by Alfred F. Stout, Sr., as vendor and Brigham Dalton, plaintiff, as vendee. When the suit was first instituted, Alfred F. Stout, Sr. (referred to as A. F. Stout), and Marvin Terry were defendants. Before the cause came on for trial and before the death of Alfred F. Stout, Sr., he and his wife, Mary E. Stout, made, executed, and delivered to R. R. Carey a warranty deed purporting to convey to him four of the five lots and described as lots 1 and 5 of block 3, and lots 2 and 3 of block 4, Rockville Townsite Survey. By amended complaint, Alfred F. Stout, Jr., as the administrator of the estate of Alfred F. Stout, Sr., deceased, R. R. Carey, and other persons were made defendants. The cause was tried to the court, sitting without a jury, resulting in a judgment in favor of the plaintiff.

Alfred F. Stout, Jr., as administrator of the estate of Alfred F. Stout, Sr., deceased, and R. R. Carey appeal. It appears that on March 9, 1910, A. F. Stout, who was at that time the owner of the lots in question, entered into a contract in writing whereby he agreed to sell to Brigham Dalton, and Brigham Dalton agreed to buy, the five lots above described. The contract did not operate as a present conveyance of title. It reads as follows:

Rockville Mar. 9, 1910

"A. F. Stout party of the first part has sold his city lots and the two best rooms to party of second part Brig. Dalton for one horse to be delivered now and 250 gallons of good molasses to be delivered at Lund on or by Nov. 1st, 1910. Deed to property will be turned over to party of second part at final payment.

"Signed A. F. Stout Sen.
"B. Dalton."

The consideration stated was one horse and 250 gallons of molasses. The horse was to be delivered upon signing the contract, and the molasses was to be delivered at Lund, Utah, on or by November 1, 1910. Deed was to be delivered when final payment was made. At that time Alfred F. Stout, Sr., had a wife living, who survived him as his widow. Her

name is Mary E. Stout. She did not join her husband in the contract with Dalton. She is not a party to this action. The issues have been so far stated for the purpose of indicating the matter upon which the trial court entered judgment.

Appellants assign no errors. There appear in the abstract two purported assignments of error. None appear to have been served, or, if served, have not been filed in this court. Without an assignment of error there is nothing before this court for consideration. "The assignment of error is the foundation upon which rests the right of the court to review any matter." *State* v. *Kranendonk,* 79 Utah 239, 9 P. (2d) 176, 177; *Perrin* v. *Union Pac. R. Co.,* 58 Utah 1, 201 P. 405; *Sterling Furn. Co.* v. *Tobias,* 85 Utah 457, 39 P. (2d) 765, and authorities there cited.

Nothing can be done except to affirm the judgment of the trial court. Such is the order. Respondent to recover costs.

ELIAS HANSEN C. J., and FOLLAND and EPHRAIM HANSON, JJ., concur.

WOLFE, Justice (dissenting).

I dissent. I think we should decide this case on the merits. We have the specification of the errors in the abstract. Respondent was apprised of what rulings of the lower court the appellants were attacking. He not only made no objection to the failure to file an assignment of errors, but wrote his brief and argument in apparent ignorance that the paper known as the assignment of errors had not been filed. Only the latter paper was lacking from the files. The prevailing opinion quotes from *Teakle* v. *San Pedro, etc., R. Co.,* 32 Utah 276, at page 280, 90 P. 402, 405, 10 L. R. A. (N. S.) 486, wherein the court in that case says:

"The assignment of error is the foundation upon which rests the right of the appellate court to review the errors imputed to the trial court, and this court has repeatedly held that only such errors as

are assigned will be reviewed, unless it is something which goes to the jurisdiction of the court."

This statement is quoted again in the case of *Perrin* v. *Union Pac. R. Co.,* 59 Utah 1, 201 P. 405, and also in the case of *State* v. *Kranendonk,* 79 Utah 239, 9 P. (2d) 176. This is one of those aphorisms which says more than it means. It is quite true that this court need and ordinarily will not take notice of alleged errors which are not specified. We will not look through the records to ferret out errors in rulings, but where they are sufficiently contained in the abstract and the opposing party knows what he has to meet and makes no objection but files a brief on the supposition that the assignments have been filed, this court at its discretion may review the rulings. I think the instant case is one where discretion should be exercised in favor of the appellant.

I am aware that the case of *Lyon* v. *Mauss,* 31 Utah 283, 87 P. 1014, 1015, held that printing what purported to be an assignment of errors in the abstract was not a printing of a part of the record when the assignment of errors had not been filed, and also held that, "The assignment of errors is the groundwork of the case in this court. Without errors being assigned, there is nothing before this court." This was followed in the case of *American Trust Co. of St. Louis* v. *Millard County Drainage Dist. No. 3,* 75 Utah 309, 284 P. 1000, and in the case of *Tanner* v. *Provo Reservoir Co.,* 78 Utah 158, 2 P. (2d) 107.

The theory that the assignment of errors is the foundation of the right to a review is erroneous. That practically makes the assignment a condition of jurisdiction. I find no warrant for this view in the statutes or in our rules. The only reference to assignment of errors is in section 104-41-5, R. S. Utah 1933, a successor of section 6994, Comp. Laws Utah 1917, section 3304, Comp. Laws Utah 1907, Laws Utah 1901, chap. 27, p. 25, and section 3304, R. S. Utah 1898; the latter section containing the first paragraph only:

"Upon an appeal from a judgment, all orders, rulings and decisions in the action or proceeding to which exceptions have been taken in the court below, or which are deemed excepted to as provided by this code, are before the supreme court for review.

"In equity cases any question of fact shall be reviewable by the supreme court without a motion for a new trial, and in all cases at law, tried before the court without a jury, all questions of error in findings of fact and conclusions of law legally reviewable by the supreme court shall be before the supreme court for review without a motion for a new trial, and either party to the appeal *may assign any errors* in findings of fact or conclusions of law, or *may assign as error* that any findings of fact by the court are not supported by evidence, without filing a motion for a new trial in the court below."

The statute specifies that *all* orders, rulings, and decisions are before this court for review. It does not make the review conditional on the assignments of error. The section says either party may assign any errors in findings of fact or that they are not supported by the evidence, and may assign any errors in the conclusions of law, without a motion for a new trial. This was but another way of saying that errors in the findings or conclusions and their failure to be supported by the evidence could be reviewed without a motion for a new trial. There being nothing, therefore, in the statute which directly or by implication requires an assignment of errors, the necessity for filing the same rests upon a rule of this court. I have no doubt of the authority of the court by rule to require assignments. They are very necessary to the orderly review of a case. Otherwise I can see no way in which opposing counsel or this court could be apprised with definiteness of what rulings were being assailed. My protest is not upon the requirement of assignments, but upon the principle that such assignments are the foundation of our right to review the case. I think we have discretion to review any ruling which appears on the record if we so desire. The rule in effect at the time this appeal was taken reads as follows:

"Rule 26. The appellant shall assign errors in writing, subscribed by himself or his counsel, and shall serve a copy thereof on the respondent or his counsel, and file the original with the clerk of this

court within fifteen days from the time of the filing of the transcript of the record on appeal. If the respondent desires to assign cross errors, he shall do so in writing, and shall serve a copy thereof on the appellant or his counsel, and file the original with the clerk of this court within five days from the time of service of appellant's assignments. Such service may be personal or by mail. Each alleged error shall be separately stated. When the alleged error is upon the ground of the insufficiency of the evidence to sustain or justify the verdict or decision, the particulars wherein the evidence is so insufficient shall be specified. The said assignments, or so much thereof relied upon, shall be set forth in the printed abstract, together with reference to the pages in the transcript and abstract where the rulings and exceptions pertaining thereto appear."

The rule says nothing about the consequence of not assigning error. Its purpose was to acquaint the court and opposing counsel with the rulings assailed. It says nothing about a rule which prohibits this court from entertaining alleged or discovered errors not assigned, although it may be heeded that this court will not ordinarily do so. We have in some cases taken cognizance of errors not assigned. Indeed, it may be most necessary in some cases to do so. I do not think we should preclude ourselves by so interpreting this rule that we are helpless to take cognizance of errors if we desire to do so, at least after opportunity on the part of counsel to present argument in regard thereto. In the case of *State* v. *Stenback,* 78 Utah 350, 2 P. (2d) 1050, 79 A. L. R. 878, and even in the Teakle Case, it was held that a matter which is fundamental or which goes to the jurisdiction of the lower court could be reviewed without assignment of error. Says Corpus Juris, vol. 3, p. 1342:

"In a number of jurisdictions, either by reason of an express exception in the statute or rule of court, or because the court has discretion in the matter, the appellate court will notice plain errors, or errors which are fundamental and apparent upon the face of the record."

The Supreme Court of the United States by rule 35, may notice plain errors not assigned. This has been interpreted to give it discretion to review any error. *Weems* v. *U. S.,* 217 U. S. 349, 30 S. Ct. 544, 54 L. Ed. 793, 19 Ann. Cas. 705.

It is held that even this is not a rigid rule because the court could determine what errors were and what were not plain. It was held that it conferred a discretion exercisable at any time regardless of what may have been done at other times. In the case of *Nat'l Acc. Soc.* v. *Spiro*, 78 F. 774, 24 C. C. A. 334, it was held under the discretion reserved in the Circuit Court of Appeals rule as to noticing errors not assigned, if an assignment which does not comply with the rule has any sound merit and the court can be satisfied from the whole record that a probable injustice has been done, it will be disposed to notice the error so defectively assigned; but if the error complained of is highly technical the record indicating no probable injustice, the court will not incline to leniency in the enforcement of the rule, although, if the error had been correctly assigned, it might have felt constrained to reverse the judgment because of it. It was said, however, in *Mast & Co.* v. *Superior Drill Co.*, 154 F. 45, 51, 83 C. C. A. 157, that:

"The underlying purpose of this reservation in the rule is to prevent the miscarriage of justice from oversight."

It will be noted in the above cases that the court, sua sponte, took cognizance of errors. In the instant case we do not have to do that because we have printed in the abstract the purported errors. The paper known as the "assignment of errors" was for some reason not filed.

The history of the statutes dealing with assignments of error will throw some light upon the question as to whether such specifications were considered by the Legislature as necessary for the review of error. I am indebted for the following data to Cyrus G. Gatrell, Esq., a member of the Utah State Bar and a member of the staff of this court: We find adopted on December 30, 1852, a law entitled "An act Regulating the Mode of Procedure in Civil Cases in the Territory." By this act there was granted a right of appeal from the district courts to the Supreme Court, but the act was silent as to procedure. See Laws Utah 1855, ch. 3, § 25, p. 136; Laws Utah 1866, ch. 4, § 23, p. 35. In an act

"Providing for Appeals to the Supreme Court," adopted January 18, 1861, provision is made for bills of exceptions which shall "constitute part of the record of the cause," but no mention is made of assignments or specifications of errors. See Laws Utah 1866, chap. 31, § 7, p. 67; Comp. Laws Utah 1876, § 1056, p. 350. In the Civil Practice Act adopted February 17, 1870, it was provided that applications for new trials might be made upon affidavits or statements and then further provided:

"When the notice designates as the ground upon which the motion will be made the insufficiency of the evidence, to justify the verdict or other decision, the statement shall *specify the particulars in which such evidence is alleged to be insufficient.* When the notice designates as the ground of the motion; error in law occurring at the trial and excepted to by the moving party, the statement *shall specify the particular errors* upon which the party will rely. If no such specifications be made, the statement shall be disregarded." Laws Utah 1870, § 195, p. 52; Comp. Laws 1876, § 1420.

This law further provided:

"When the party who has the right to appeal wishes a statement of the case to be annexed to the record of the judgment or order, he shall, within twenty days after the entry of such judgment or order, prepare such statement, which shall *state specifically the particular errors or ground* upon which he intends to rely on the appeal, and shall contain so much of the evidence as may be necessary to explain the particular errors or grounds specified and no more * * *." Laws 1870, § 330, p. 78; Comp. Laws 1876, § 1555.

This law of 1870 seems to be the first definite attempt to narrow down the appeal to certain specified errors. The Code of Civil Procedure adopted March 13, 1884, provides that application for a new trial may be made on affidavit, minutes of the court, bill of exceptions, or statement of the case, and provides that both the statement and the motion shall contain the same specifications as required by the Civil Practice Act adopted February 17, 1870. See Laws 1884, p. 348 § 536, subsecs. 3, 4; Comp. Laws 1888, § 3402, subsecs. 3, 4. This Code of Civil Procedure further provides that on appeal from a final judgment a statement of

the case used on the motion for a new trial or settled after decision of such motion may be used on the appeal. By the Revision of 1898 all reference to or authorization for a "statement of the case" is eliminated, a motion for a new trial being made either on affidavits or minutes of the court. Specifications of the particular errors were, however, required by section 3296 of that Revision, which reads as follows:

"When the motion is made upon the minutes of the court, and the ground of the motion is the insufficiency of the evidence to justify the verdict or other decision, the notice of the motion must *specify the particulars in which the evidence is alleged to be insufficient;* and if the ground of the motion be errors in law occurring at the trial and excepted to by the moving party, the notice must briefly indicate *the particular errors* upon which the party will rely."

Thus by the Revision of 1898 it is clear that the specification of errors was required to be made on a motion for a new trial, and that the motion for a new trial was a necessary step preliminary to the appeal, and that consequently on the appeal the specification of errors which was the basis of the motion for a new trial was before the review court. Whether or not the court would confine itself to such specification of errors, I am unable to say. However, in 1899 the Legislature did away with the necessity for a specification of errors by repealing section 3296 and providing by chapter 59, Laws Utah 1899, p. 82, as follows:

"In an application for a new trial it shall be sufficient for the party applying for the same to state in the language of the statute only, one or more grounds as specified in section 3292 of the Revised Statutes of Utah, 1898; provided, that when the application is made upon the first, second, third or fourth subdivision of section 3292 of the Revised Statutes of Utah 1898, it must be supported by affidavit. In all other cases it may be made upon the minutes of the court." Section 1.

At the time the Legislature of 1899 repealed the only existing statutory requirement for a specification or assignment of errors, there remained in force section 3304 of the Revised Statutes of 1898, which provided substantially as the first paragraph of our present statute, section 104-41-5.

It thus appears that the Legislature specifically intended not to require, as a basis of appeal, assignments of error, although it may have contemplated that such should be required by a rule of the court.

Because I do not believe that our statute nor our rules prohibit us from considering the correctness of any ruling of the lower court, the same being discretionary with us if not assigned, and because I further believe in this case the court and opposing parties were sufficiently put on notice of the rulings of the lower court which were questioned by appellants by specification of errors printed in the abstract, the same as if they had been contained on a sheet of paper filed in the court, I cannot concur in the prevailing opinion which disposes of the case without consideration of the merits. I therefore dissent.