DECIDED IN

# THE SUPREME COURT

OF THE

# STATE OF UTAH

*(Continued from Volume 57.)*

## NUTTER v. CARBON COUNTY.

No. 3554.   Decided March 21, 1921.   (196 Pac. 1009.)

1. TAXATION—COURT IN ACTION FOR TAXES PAID UNDER PROTEST SHOULD HAVE CONFINED INQUIRY TO FACTS BEFORE ASSESSOR AND BOARD. In an action against a county to recover taxes paid under protest, pursuant to Comp. Laws 1917, § 6094, by a cattle owner, the court exceeded its power in attempting to determine from independent evidence the number of cattle the assessor should have assessed and the board of equalization should have affirmed and permitted to be placed on the tax rolls against the owner for the year involved; the court should have confined its inquiry to the facts and circumstances as they were made to appear to the assessor and the board of equalization, and therefrom determined whether the assessment was maliciously, arbitrarily, unlawfully, or fraudulently made, or whether, if the owner was assessed for an excessive number of cattle and horses, the excess was a mere error of judgment of the assessor and board.

2. TAXATION—ASSESSOR JUSTIFIED IN AVAILING HIMSELF OF ANY RELIABLE INFORMATION AS TO NUMBERS OF CATTLE OWNED BY TAXPAYER. In view of the fact that cattle and horses of an owner were not so located that the assessor could count them because they were scattered over a vast territory through the hills, mountains, and public domain of the county, the assessor

(1)

was justified in availing himself of any reliable source of information as to the number of the cattle which seemed trustworthy to him.

3. TAXATION—EVIDENCE INSUFFICIENT TO SUSTAIN FINDING OF FRAUD OR MALICE IN ASSESSMENT OF NUMBER OF CATTLE. In an action by the owner of cattle to recover taxes paid thereon under protest pursuant to Comp. Laws 1917, § 6094, evidence *held* insufficient to justify any finding of fraud or malice on the part of the assessor and the board of equalization of the county in assessing the owner with 1,500 head of cattle.

4. TAXATION—ASSESSMENT NOT INVALID UNLESS ASSESSOR ACTED UNLAWFULLY, MALICIOUSLY, OR FRAUDULENTLY, WITHOUT WHICH COURT CANNOT GIVE RELIEF. Where it is contended the assessor overvalued the property of a taxpayer, or assessed a greater number of head of cattle to him than he should have, the question is not merely whether such was the fact, but whether the assessor acted maliciously, unlawfully, or fraudulently in making the assessment; if the assessor's act was a mere error of judgment, the courts cannot give relief.[1]

5. TAXATION—COURTS CANNOT GIVE RELIEF AGAINST BOARD OF EQUALIZATION EXCEPT FOR UNLAWFUL OR FRAUDULENT ACT. Where the taxpayer may have any error in the number of cattle assessed to him corrected by making application to the board of equalization, the question is whether such board in refusing to correct the error, if one was in fact made; acted unlawfully, maliciously, or fraudulently; if its act was a mere error of judgment, the courts are powerless to give relief.[2]

Appeal from District Court, Seventh District, Carbon County; *Geo. Christensen*, Judge.

Action by Preston Nutter against Carbon County. From judgment for plaintiff, defendant appeals.

JUDGEMENT REVERSED, AND CAUSE REMANDED, with directions.

[1] *Home Fire Ins. Co.* v. *Lynch*, 19 Utah, 194, 56 Pac. 682; *Mercur G. M. & M. Co.* v. *Spry*, 16 Utah 222, 52 Pac. 382.

[2] *Home Fire Ins. Co.* v. *Lynch*, 19 Utah, 194, 56 Pac. 682; *Mercur G. M. & M. Co.* v. *Spry*, 16 Utah, 222, 52 Pac. 382.

*A. T. Sanford,* of Salt Lake City, and *B. W. Dalton,* of Price, for appellant.

*F. Ericksen,* of Salt Lake City, for respondent.

FRICK, J.

The plaintiff commenced this action against Carbon county to recover alleged taxes which he paid under protest pursuant to Comp. Laws Utah 1917, § 6094. In the complaint it is in substance alleged that for the year 1915 the "plaintiff returned and reported himself to be the owner of 1,000 head of cattle and 20 head of horses, and no more, in Carbon county, state of Utah, for assessment" for all purposes; that, notwithstanding such return, the county assessor of Carbon county "unlawfully, arbitrarily, capriciously, and fraudulently" assessed plaintiff for the year 1915 as being the owner of 1,500 head of cattle and 30 head of horses, at a fixed valuation, which is not assailed; that said assessment was for "500 head of cattle and 10 head of horses" more than plaintiff had returned and reported to the assessor, and to that extent said assessment was in excess of the cattle and horses "owned or claimed by said plaintiff"; that after said assessment was made the county commissioners of Carbon county, sitting as a board of equalization, "was requested by plaintiff to correct said assessment and to reduce the number of horses and cattle to correspond with his report and return, namely," that the number be reduced to 1,000 head of cattle and to 20 head of horses; that said board refused to do so, and "unlawfully, arbitrarily, capriciously, and fraudulently" caused said excessive assessment to be placed on the tax rolls of said county; that said "assessment was and is unlawful, in this, that it included 500 head of cattle and 10 head of horses not owned or claimed by plaintiff, nor in his possession, nor under his control on January 1, 1915, in Carbon county, Utah"; that the tax levied against said cattle and horses amounted to $1,282.28, all of which was paid by plaintiff under protest; that by reason of the excessive number of

cattle and horses assessed the taxes aforesaid were excessive to the amount of $427.43, for which sum plaintiff prayed judgment. The defendant in due time answered to the complaint, in which answer, after admitting the matters of inducement, the defendant also admitted that for the year 1915 plaintiff had been assessed for 1,500 head of cattle and for 30 head of horses in Carbon county. Defendant also admitted that plaintiff had appeared before the board of equalization of said county and had requested said board to reduce the said assessment from 1,500 head of cattle to 1,000 head and from 30 head of horses to 20 head, and that said board had refused so to do, and that the assessment as made by the assessor was confirmed and permitted to stand. The defendant then affirmatively set forth the facts respecting the efforts that the assessor made to ascertain the correct number of plaintiff's cattle and horses by him owned in Carbon county, and further set forth the proceedings had before the board of equalization of said county; that plaintiff had been requested to furnish the assessor with a statement of the number of cattle and horses owned by him in Carbon county, and by said board of equalization had also been requested to make oath to the number of cattle and horses owned by him in said county, with both of which requests he had refused to comply. The defendant in its answer also denied the alleged misconduct and fraud on the part of the assessor and board of equalization, and averred that, in view that the plaintiff had failed to comply with the requests of the assessor and the board of equalization as aforesaid, and that said assessment had been properly confirmed by the board of equalization, he was estopped from prosecuting this action.

Upon substantially the foregoing issues the case was tried to the court. Findings of fact and conclusions of law were made in favor of plaintiff, but not to the extent claimed by him. The court, it seems, proceeded upon the theory that it had the power to determine the number of cattle and horses the assessor and the board of equalization should have assessed and to determine the amount of taxes plaintiff should have paid independently of the action of the assessor and the board of equalization. In view of the foregoing theory of the

court, it proceeded to find the number of cattle and horses
owned by plaintiff upon independent evidence, and did not
confine itself to the facts and evidence before the assessor and
the board of equalization of Carbon county when the assess-
ment was made by the assessor and confirmed by the board.
In view that the court pursued the foregoing method it ar-
rived at a conclusion different from that contended for by the
plaintiff and also different from that arrived at by the as-
sessor and by the board of equalization, in that the court
found that, while the plaintiff owned more than 1,000 head
of cattle in Carbon county at the time aforesaid, he did not
own 1,500 head, and hence determined for itself the number
of head plaintiff should have been assessed with for the year
1915, and did not permit plaintiff to recover the amount
prayed for by him, but allowed a recovery of only $166.80
and entered judgment for that amount.

The defendant appeals from that judgment and assigns
numerous errors relating to the admission of evidence, to the
rulings of the court, to the denying of defendant's motion
for a nonsuit and the findings of fact and conclusions of law,
and to the entry of judgment.

The court, as we will show hereinafter, exceeded its power
in attempting to determine from independent evidence the
number of cattle the assessor should have assessed and the
board of equalization should have affirmed and permitted to
be placed on the tax rolls for the year 1915. The court
should have confined its inquiry to the facts and cir-
cumstances as they were made to appear to the as-
sessor and to the board of equalization, and from such
facts and circumstances it should have determined whether
the assessment was maliciously, arbitrarily, unlawfully, or
fraudulently made, or whether, in case plaintiff was assessed
for an excessive number of cattle and horses, such excess was
a mere error of judgment on the part of the assessor and the
board of equalization. In view, therefore, that the court ad-
mitted and considered all the evidence produced by plaintiff
at the trial respecting the number of cattle and horses owned
by him on January 1, 1915, regardless of whether the facts
were known by or had been disclosed to the assessor and the

board of equalization, we shall also state the evidence that was received by the court, but in arriving at our conclusion shall consider such only as was before the assessor and the board of equalization when they acted in the premises.

The plaintiff owned about 7,000 head of cattle in Arizona, including what are called the breeding stock. From the increase of these cattle he testified that he shipped into the state of Utah about 1,000 head each year, which he called range cattle, and that he shipped out of the state of Utah about 1,000 head of said cattle each year. The number of range cattle he owned in Utah, he testified, amounted to about 2,000 head, and in addition thereto he also owned in Utah about 200 head of breeding cattle. Plaintiff, however, frankly admitted that he did not know the precise number of head of cattle he owned in Utah or in Carbon county on January 1, 1915, but he owned about 2,000 head of range cattle and about 200 head of breeding cattle, as before stated. This would make the number of cattle owned by him 2,200 head. These cattle were kept in three counties in Utah, namely, in Emery, Duchesne, and Carbon. In the year 1915, plaintiff was assessed with 600 head of cattle in Emery county, 100 head in Duchesne county, and 1,500 head in Carbon county. These cattle ranged over a territory of thousands of acres. Plaintiff owned and controlled by leases about 40,000 acres in the three counties, about 30,000 or more of which he owned and controlled in Carbon county, and the cattle, in addition to that territory, also ranged over practically three townships of the public domain. The assessor of Carbon county knew that plaintiff was the owner of large herds of cattle in Utah, and knew that he had thousands of acres of land in Carbon county on and over which his cattle ranged, but he did not know the number of cattle owned in Carbon county. The assessor testified that at the proper time in 1915, he had mailed to plaintiff a blank taxpayer's statement as provided by our statute on which he could have made a return to the assessor under oath of the number of cattle he owned in Carbon county. The assessor, however, testified that no return was made to him in that form. While the plaintiff denied that he had received the blank form of statement, he testified

that he personally saw the assessor and told him that he
thought that about 1,000 head of cattle and 20 of horses
would be the right number he owned in Carbon county and
which should be assessed therein. The assessor was not satis-
fied with plaintiff's statement, however, so he made an effort
to ascertain from other and what seemed to him reliable
sources the number of cattle and horses, as nearly as possible,
that plaintiff owned subject to assessment in Carbon county.
The assessor then sought information from other cattlemen
in Carbon county who ranged cattle in said county, and who
apparently were acquainted with plaintiff's herds and where
they ranged in Carbon county, and from such information he
became convinced that plaintiff owned more cattle in Carbon
county than he had stated to the assessor he owned. Indeed,
some of the cattlemen claimed that plaintiff owned as many
as 3,000 head of cattle in Carbon county at the time aforesaid.
It was thus upon the information the assessor obtained from
plaintiff and from those other sources that he fixed the num-
ber of plaintiff's cattle at 1,500 head and the horses at 30
head. When plaintiff was notified of the number of cattle
and horses he was assessed for, he went before the board
of equalization and requested that the number be reduced
from 1,500 head of cattle to 1,000 and 30 head of horses to
20. He, however, made only an oral statement and applica-
tion to the board of equalization, the same as he had made to
the assessor. Some of the members of the board of equaliza-
tion testified that when he was requested to make oath to the
fact that he owned only 1,000 head of cattle and only 20 head
of horses in Carbon county he declined to do so. Plaintiff,
however, says that he was not requested to make such an oath.
Be that as it may, he, however, made no statement at any
time under oath to either the assessor or the board of equali-
zation, and he never made a statement of the exact number
of cattle or horses he owned in Carbon county. Indeed, he
frankly said that he did not know, and the court arrived at
the same conclusion. Instead of finding that the plaintiff
owned only 1,000 head of cattle in Carbon county in 1915, as
claimed by plaintiff, the court found that he owned 1,200
head, and assessed him for that number. The court, however,

arrived at that result, not from the evidence that was before
the assessor and the board of equalization, but upon the
whole evidence which came from witnesses, and which plain-
tiff did not produce either to the assessor or to the board of
equalization. It will thus be seen that plaintiff did nothing
more than state to the assessor that he thought that he should
be assessed for a certain number of cattle and horses and at
no time protected either himself or the assessor by making a
statement under oath or in writing.

In view that the cattle and horses were not so located that
the assessor could count them, by reason that they were scat-
tered over a vast territory through the hills and mountains
and on the public domain in Carbon county, the as-
sessor was justified in availing himself of any reliable        2
source of information which to him seemed trust-
worthy. This he did by applying to other cattlemen who
seemed to possess knowledge upon the subject. This is not
all, however. After the number had been fixed at 1,500 cat-
tle and 30 horses, plaintiff was duly notified as required by
law. He thus could make his complaint to the board of equali-
zation and present his evidence before said board. He, how-
ever, again failed to make any sworn statement to the board,
but again contended himself with an oral statement. Upon
the showing thus made the board of equalization refused to
reduce the assessment, and, in view of the record, it is not
easy to conceive how the board could have done otherwise.
The district court felt constrained, however, to determine
from all the evidence the number of cattle and horses plaintiff
should have been assessed for the year 1915. True, the court
found that the assessor had acted unlawfully, capriciously,
and arbitrarily in assessing plaintiff with 1,500 head of cattle,
and that the board of equalization acted likewise in refusing
to reduce the number to 1,000 head. The mere fact that the
court found that plaintiff was mistaken to the extent of at
least 200 head in and of itself is conclusive proof that the
plaintiff either did not know or willfully did not state the
correct number of cattle to the assessor or to the board of
equalization.

In this connection it is important to remember that plain-

tiff admitted that he may have had 2,000 head of range cattle in Utah, and, in addition to that number, also 200 head of breeding cattle, in January, 1915. He had returned for assessment 600 head in Emery county and 100 head in Duchesne county, making 700 head in all. Deducting those 700 head from 2,200 head would, according to plaintiff's own statement, leave 1,500 head. Assuming, as we must, that he honestly listed all of his cattle in Duchesne and Emery counties, how can it be said that, the assessor and the board of equalization of Carbon county acted unlawfully, maliciously, capriciously, and fraudulently in assessing 1,500 head? They may have erred, but there is nothing on which to rest any finding of fraud or malice.

The district court seemed to be of the opinion, however, that it was sufficient to entitle the plaintiff to relief if it found from all the evidence that the plaintiff had been assessed any number of cattle and horses in excess of what he owned in Carbon county. Such is not the law. Where, as here, it is contended that the assessor overvalued the property of a taxpayer, or that he assessed a greater number of head than he should have assessed, the question is not merely whether such is the fact, but the question is: Did the assessor act maliciously, unlawfully, or fraudulently in making the assessment? Moreover, where, as in this case, the taxpayer may have any error of such a character corrected by making application to the board of equalization, the question again is: Did such board, in refusing to correct such an error, if one was made, act unlawfully, maliciously, or fraudulently? If its act was a mere error of judgment and was not unlawfully, maliciously, or fraudulently done, the courts are powerless to give relief. This court is firmly committed to the doctrine just stated. The rule is clearly stated in the case of *Home Fire Ins. Co.* v. *Lynch,* 19 Utah, at page 194, 56 Pac. at page 682, where, in discussing the power of courts to interfere in such cases the court said:

"In the absence of fraud or the exercise of bad faith upon the part of the assessor, his judgment of the value of said property was conclusive, unless changed, on the application of the

plaintiff, by the board of equalization.  *  *  *  They had the
authority, under section 2576, Rev. Stat. 1898, to correct said as-
sessment, but upon the showing made by plaintiff refused to do so.

"It is left to the Legislature, by the Constitution, to provide
for the assessment and valuation for taxation of all taxable prop-
erty in the state.  The Legislature has provided the method for
doing this, and has also provided a mode of correcting any over-
valuation by the assessor.  This remedy for the correction of as-
sessments is exclusive, and not subject to review by the courts
under the facts presented in this case."

The same principle is recognized in *Mercur G. M. & M.
Co.* v. *Spry,* 16 Utah, 222, 52 Pac. 382.

The foregoing doctrine is supported by all the courts un-
less there is an express statute authorizing interference by
the courts.  In the case of *Finney County* v. *Bullard,* 77 Kan.
349, 94 Pac. 129, 16 L. R. A. (N. S.) 807, the Supreme Court
of Kansas, after stating that the plaintiff in that case claimed
that his property had been assessed at an excessive valuation,
said:

"The courts are not charged with the powers and duties of
assessors, and have no right to review the decisions of those offi-
cers as to the value of property.  The Legislature has placed the
responsibility upon the assessors in the first instance, and in case
an owner of property is dissatisfied with their assessments he may
appeal to the board of equalization to review values and correct
mistakes of judgment.  *  *  *  Since the statute gives no right
to appeal from the board of equalization, its opinion and judg-
ment as to valuation are plenary, and it is not within the power
of the courts to interfere with a tax merely because the assess-
ment is excessive or unequal."

In *Benn* v. *Slaymaker,* 93 Kan. at page 68, 143 Pac. at
page 504, the same court, in the course of the opinion, says:

"It is settled law that an assessment is not deemed fraudulent
merely because it is excessive, and a court of equity has no juris-
diction under its general powers to correct an unequal or unjust
assessment, when a statutory board has been provided for that
purpose."

In the case of *First National Bank, etc.,* v. *Hopkinsville,*
128 Ky. 383, 108 S. W. 311, 16 L. R. A. (N. S.) 685, in pass-
ing upon an attempted interference with an alleged over-
valuation of property, as was attempted in the case at bar
by the trial court, the Supreme Court of Kentucky said:

"The effect of this would be to substitute the judgment of the court for that of the assessing officers; in other words, to make a new assessment."

That is precisely what the district court did in this case. The court agreed with neither the assessor nor plaintiff, but fixed the number of cattle in accordance with its own views. That the court was powerless to do for the purpose of fixing the basis of assessment. He could only determine the number of cattle for the purpose of determining whether or not the assessor had in fact assessed a greater number than were owned by plaintiff. If the evidence had justified a finding that the assessor acted maliciously or fraudulently, or that the board of equalization had also so acted in confirming the assessment, then the court might have set aside the assessment to the extent that it was excessive, but it could not make a new assessment. Neither could it set aside the assessment unless the number, if excessive, was maliciously, fraudulently, and willfully fixed by the assessor. The following authorities all support the texts we have quoted from: *Chape* v. *Franklin County*, 58 Neb. 544, 78 N. W. 1062; *Ricketts* v. *Crewdson*, 13 Wyo. 284, 79 Pac. 1042, 81 Pac. 1; *California, etc., Co.* v. *Los Angeles County*, 10 Cal. App. 185, 101 Pac. 549; *Hammond Lumber Co.* v. *Cowlitz County*, 84 Wash. 462, 147 Pac. 19; *Northern Pac. Ry. Co.* v. *Pierce County*, 55 Wash. 108, 104 Pac. 178; *Benn* v. *Slaymaker*, 93 Kan. 64, 143 Pac. 504; *Board of Com'rs* v. *Searight Cattle Co.*, 3 Wyo. 777, 31 Pac. 268; 2 Cooley, Taxation (3d Ed.) p. 1382; 37 Cyc. 1010.

In 2 Cooley, *supra*, the author, after stating under what circumstances an assessment may be assailed in the courts, says:

"But for a merely excessive or unequal assessment, where no principle of law is violated in making it, and the complaint is of an error or judgment only, the sole remedy is an application for an abatement, either to the assessors or to such statutory board as has been provided for hearing it. The courts either of common law or of equity are powerless to give relief against the erroneous judgments of assessing bodies, except as they may be specially empowered by law to do so."

There is no such power conferred under our statutes.

While it is true that the plaintiff, in his complaint, alleged that the overassessment was capriciously, fraudulently, and unlawfully made, yet he furnished no evidence which would authorize any court to so find.

Again, while it is true, as is held in *Simpson Logging Co. v. Chehalis County*, 80 Wash. 245, 141 Pac. 344, that an assessment may be so grossly excessive as to constitute constructive fraud—that is, fraud in law—yet such is not the case here. It is manifest that the plaintiff did not know the number of cattle he owned in Carbon county. Neither did he produce any witnesses who did know the precise number. The most that he and his witnesses could do was to give an approximation of the number of cattle in accordance with their best judgment. When it is kept in mind that such approximation was made at the time of the trial and after due reflection, and perhaps investigation, by the witnesses, it becomes doubly clear why there is not the slightest ground upon which a court could base a finding that either the assessor or the board of equalization acted unlawfully, maliciously, or capriciously in the premises. Indeed, such a finding would do violence to the entire trend of all the evidence in the case. This is not a case where we are interfering with a finding on a question of fact made by the district court, or passing upon the weight of the evidence, or the credibility of witnesses. What we are doing here is what we are bound to do in every case; that is, determine whether there is any substantial evidence to justify a material finding. The material finding in this case, as we have seen, is that the assessor acted maliciously, unlawfully, or fraudulently in making the assessment, and that the board of equalization acted likewise in confirming the same. There is no substantial evidence to justify any such finding, and the court, in finding that the plaintiff had at least 200 head of cattle in excess of what he reported to the assessor in Carbon county at the time, clearly must have concluded that the plaintiff was mistaken. From that it follows that the court should have found and concluded that the error, if any was committed by the assessor and by the board of equalization, was an error of judgment,

and that they were not actuated by bad motives or with an intent to oppress or defraud the plaintiff.

From what has been said it follows that the court erred in denying appellant's motion for a nonsuit and in entering judgment in favor of plaintiff in any amount. The judgment is therefore reversed, and the cause is remanded to the district court of Carbon county, with directions to grant the appellant a new trial and to proceed with the case in accordance with the views herein expressed; appellant to recover costs.

CORFMAN, C. J., and WEBER, GIDEON, and THURMAN, JJ., concur.