## CRYSTAL CAR LINE et al v. STATE TAX COMMISSION et al.

No. 6916. Decided November 29, 1946. (174 P. 2d 984.)

428

See 61 C. J. Taxation, sec. 738; 51 Am. Jur. 260. Ad valorem taxation of motor vehicles, notes, 99 A. L. R. 1165; 114 A. L. R. 853.

*Rawlings, Wallace & Black,* and *Clyde & Corey,* all ot Salt Lake City, *(Leon S. Hirsh,* of Chicago, Ill., and *Gail L. Ireland,* of Denver, Colo., of counsel), for appellant.

*Wayne Christoffersen* and *David S. King,* both of Salt Lake City, for respondent.

WADE, Justice.

This is an appeal from an adverse judgment in a case brought by the car companies under our Declaratory Judg-

ment Act, Utah Code 1943, 104-64-1 et seq., to determine the right of the defendants and respondents herein to tax their cars. Although all the plaintiffs had separate causes of action, they joined in one action to avoid a multiplicity of suits, since the questions involved and the relief asked were the same in each instance.

All of the plaintiffs are non-residents and none of their cars were ever permanently within the state of Utah.

The tax commission had sought to collect taxes assessed since 1930 on cars belonging to the various plaintiffs. These cars consisted of tank, refrigerator, wine, poultry and beer cars which were leased by them to different railroad companies throughout the United States. The plaintiffs did not operate these cars and retained no control over them while they were being used by the railroads to transport commodities. The railroad company using the cars would route them through whatever states it desired. The cars were not leased in units but left on tracks convenient for the users and when a railroad needed a particular type of car it would take one or more as needed and pay the plaintiffs for the use on a mileage basis.

The plaintiffs had failed to pay the taxes assessed against their cars since 1930 and after numerous conferences between their representatives and the tax commission in which a compromise settlement of the taxes sought to be collected was discussed, this suit for a declaratory judgment was brought. After this action was brought naming the individual tax commissioners as well as the tax commission as defendants, the defendants sought to collect the taxes by attaching a car belonging to one of the plaintiffs which was found in the state of Utah, whereupon a temporary injunction was issued against the tax commission to restrain it from attaching plaintiffs' cars pending the outcome of this suit.

In their suit for a declaratory judgment plaintiffs alleged that the tax commission had no authority under Title 80 U. C. A. 1943, to tax their cars and if it was found that it did have this power, nevertheless that the manner in which

these cars were valued and assessed was in contravention of the United States Constitution and the Constitution of the State of Utah. They also pleaded that the tax commission was barred from enforcing the payment of any taxes due more than three years prior to the commencement of this action under the provisions of the Laws of 1937, Chap. 138, Sec. 1, now Sec. 104-2-24.10, U. C. A. 1943.

After trial the court found against plaintiffs on all points and dissolved the temporary injunction.

Plaintiffs assign as error the court's holding that there was statutory authority for the levying and assessment by the tax commission of taxes belonging to the American Car Corp. for the year 1932, the Northwestern Refrigerator Line Co. for the year 1933 and the Western Refrigerator Line Co. for the years 1931, 1932, and 1933. They contend that from March 24, 1931 until June 22, 1933, there was no statute authorizing the levying of taxes against car companies. They argue that whereas Sec. 5873, Laws of Utah 1917, expressly included car companies in property which was to be assessed by the state taxing board, the amendment of that section in the Laws of 1931, Chap. 53, did not include car companies. The amendment to Sec. 5873, Laws of Utah, 1917, as it appears in Laws of Utah 1931, Chap. 53, reads:

"All property owned by public utilities operated in this State and by pipe line, power, canal and irrigating companies operated in more than one county in the State, * * * must be assessed by the tax commission as hereinafter provided."

Sec. 5923 in Chap. 53, Laws of Utah 1931, provides that:

"By the first Monday in May the tax commission shall assess, * * * all property required by law to be assessed by it * * * the tax commission must apportion the total assessment of all property of such persons or companies to the several counties through or into which the property of such person or companies extends or operates, * * *, as follows: * * *

"4. The property of car companies * * *."

The power to tax is purely a legislative function and unless the legislature has provided for the taxation of the property any attempt to levy and assess a tax on property is

void. See *Tamble* v. *Pullman Co.*, 6 Cir., 207 F. 30,; *City of New Orleans* v. *Stemple*, 175 U. S. 309, 20 S. Ct. 110, 44 L. Ed. 174; *Western Leather & Finding Co.* v. *State Tax Commission*, 87 Utah 227, 48 P. 2d 526. A mere reading of the amendment to Sec. 5873 in the Laws of 1931 discloses that the property of car companies is not included in the list of property to be taxed, unless, as the tax commission argues, it is included in the term property owned by "public utilities." The statute itself does not define "public utilities," but as is stated in 43 Am. Jur., page 571:

"* * * the term 'public utility' implies a public use and service to the public; and indeed, the principal determinative characteristic of a public utility, is that of service to, or readiness to serve, an indefinite public (or portion of the public as such) which has a legal right to demand and receive its services or commodities. The term precludes the idea of service which is private in its nature and is not to be obtained by the public * * *."

This property was clearly not owned by a public utility. The car companies involved in this suit do not purport to serve the public. They supply cars under contract to railroad companies and have no dealings with the public as such and the public has no right to demand any service from them. It is apparent therefore that they are not public utilities. In *Sinclair Refining Co.* v. *State Tax Commission et al.*, 102 Utah 340, 130 P. 2d 663, in interpreting Sec. 80-5-3, R. S. U. 1933, which amended Sec. 5873, Laws of Utah 1931, this court said that car companies are not public utilities. It follows therefore that the court erred in holding that the taxes for the years 1931 to 1933 assessed against the car companies we have named above were valid.

Plaintiff further contends that there is no statutory authority for any of the taxes levied and assessed against any of the car companies after 1933, although Sec. 80-5-3, R. S. U. 1933, authorized the property of car companies to be assessed by the tax commission, because that section provides only for such an assessment of "the property of car transportation companies, when they are operated as a unit in more than one county." They contend that this provision requires that the same company

which owns the property must also operate it as a unit in more than one county. Sec. 80-5-3, provides that:

"Pipelines, power lines and plants, canals and irrigation works, bridges and ferries, and the property of car and transporation companies, when they are operated as a unit in more than one county."

must be assessed by the tax commission. It is contended that the legislature meant by the phrase "the property of car and transportation companies, when *they* are operated as a unit" (italics ours), that the property of car companies, when such car companies are operated as unit in more than one county shall be assessed by the tax commission. The italicized word "they" referring to car companies and not to the property of such companies. This raises the question of whether the legislature intended to require the tax commission to assess the property of car companies only when such property was operated by the car company itself, but did not require such property to be so assessed when such property was operated by some other person, firm or corporation. Under the proposed construction there is no requirement that the property be operated at all. The only requirement under such construction is that the car company which owns the property must be operated as unit in more than one county. This would require the tax commission to assess not only movable property but stationary property, such as real estate and buildings, which was the property of such car company which was being operated as unit in more than one county. Obviously this was not the legislative intent. It would also be very unusual for the legislature to require the assessment by the tax commission where the property was owned and operated by the car company but not require it to be so assessed when it was owned by a car company and operated by a railroad company under a lease as a unit in more than one county. The basis of requiring the assessment by the tax commission is the fact that property is being operated as a unit in more than one county. Where it is stationed in one county, the county assessor can take care of it, and there is no occasion to require the assessment

by the tax commission. In view of the above we are convinced that the italicized word "they" does not refer only to car and transportation companies, but rather both from the standpoint of the punctuation and content of the section, refers to the property enumerated therein, viz., pipelines, power lines, and plants, canals and irrigation works, bridges and ferries, and the property of car and transportation companies. When any of such are operated as a unit in more than one county they are to be assessed by the tax commission. Under such construction the legislature intended that the tax commission should assess property of car companies which is operated as a unit in more than one county regardless of whether the car company which owned such property also operated it or it is being operated by some other company. It is immaterial which company operates it as long as it is being operated as a unit in more than one county.

What is the property of car and transportation companies which must be operated as a unit in more than one county in order to be subject to assessment by the State Tax Commission? Obviously the answer is rolling stock. That is the kind of property of car and transportation companies which can and does ordinarily move from county to county. But what would have to happen to constitute the operation of such rolling stock as a unit in more than one county? If the rolling stock is owned by a car company and is operated by such company or by a railroad company under a lease as in this case, and such company which operates the property operates the same as a part of a railroad system which operates from one county to another, that is in more than one county as a part of one system, then such property is being operated as a unit in more than one county as that phrase is used in the statute and such property must be assessed by the State Tax Commission. This would be true even though all of the property belonging to such car company was operated exclusively within the limits of only one county during the entire period covered by the tax. In other words, if the company which

operates the rolling stock belonging to the car company operates such property as a part of a railroad system which covers more than one county, such property must be assessed by the State Tax Commission. On the other hand, if the rolling stock of a car company was operated by a railroad system which was limited in its operation to only one county, then such property would not be operated as a unit in more than one county and should be assessed by the county assessor of that county.

At this time we wish to call attention to a statement made by this court in *Sinclair Refining Co.* v. *State Tax Commission*, supra [102 Utah 340, 130 P. 2d 664], in which in defining "car companies" we said:

"It is evident therefore that 'car company' means one, not a railroad company which *owns and operates* cars used and moved on and over the rails and tracks of railroads or street railways." (Emphasis ours.)

If one were to fail to take into consideration the facts in that case it could be argued that this court has held that a "car company" must be one which both owns and operates its property. However, in that case, the company did both own and operate the property sought to be taxed and the question of whether the company in order to be considered a "car company" under the provisions of the act must both own and operate its property was not before this court.

Plaintiffs further contend that even if Sec. 80-5-3, R. S. U. 1933, does impose a tax liability against their property, nevertheless it is ineffective because as to rolling stock the legislature must provide the formula by which the average number of cars in the state during a taxing period can be ascertained and thus give the property a situs for taxing purposes, and also that the legislature must provide the formula for the valuation of such cars in conformity with the mandate of Art. XIII, Sec. 3 of the Utah Constitution, which, so much as is applicable here, reads:

"The Legislature shall provide by law a uniform and equal rate of assessment and taxation on all tangible property in the State, according to its value in money, and *shall prescribe by law such regulations*

as shall secure a just valuation for taxation of such property, * * *." (Italics ours.)

Plaintiffs argue that the constitutional provision we have italicized above places exclusively in the legislature the power to provide a formula to ascertain the valuation of migratory property for tax purposes and to provide the formula to determine the average number of cars habitually present within the state so as to create a situs for taxation purposes.

We cannot subscribe to these contentions. The situs of personal property for taxation purposes is established by the presence, actual or constructive, within the taxing jurisdiction where it receives the protection of said jurisdiction. See Cooley on Taxation, 4th Ed., Vol. 2, Sec. 438. Although the legislature may, if it wishes, create a situs for personal property for taxation purposes, the situs of personal property for taxation purposes does not depend upon legislative action.

Rolling stock is personal property but because of the very nature of its use the individual items are constantly changing and ordinarily do not remain in any particular jurisdiction long enough to create a taxable situs for the individual item for general property tax purposes, yet where there are always present and being used within the taxing jurisdiction a certain number of these items a situs is established for such taxation purposes, and the value of the property is arrived at by determining the average number of such items which are present in the state. See Cooley on Taxation, 4th Ed., Vol. 2, Sec. 454; *Union Refrigerator Transit Co.* v. *Lynch*, 177 U. S. 149, 20 S. Ct. 631, 44 L. Ed. 708; *American Refrigerator Transit Co.* v. *Hall*, 174 U. S. 70, 19 S. Ct. 599, 43 L. Ed. 899; *Pullman's Palace Car Co.* v. *Commonwealth of Pennsylvania*, 141 U. S. 18, 11 S. Ct. 876, 35 L. Ed. 613; *City of Covington* v. *Pullman Co.*, 121 Ky. 218, 89 S. W. 116; *Atlantic & P. R. Co.* v. *Lesueur Co. Treas.*, 2 Ariz. 428, 19 P. 157, 1 L. R. A. 244; *Union Refrig-*

*erator Transit Co.* v. *Lynch,* 18 Utah 378, 55 P. 639, 48 L. R. A. 790.

Our constitutional provision that the legislature shall provide by law a uniform and equal rate of taxation on all tangible property and "shall prescribe by law such regulations as shall secure a just valuation for taxation of · such property" does not mean that the legislature ■ must prescribe the formula which must be used by the tax commission in arriving at its assessments. The ascertainment of the amount of property to be taxed and its value is properly an administrative function. It is sufficient if the legislature provides the property shall be taxed and fixes the rate at which it may be taxed. See *State* v. *Wells Fargo & Co.,* 38 Nev. 505, 150 P. 836, wherein the contention was made that the intangible property sought to be taxed was not subject to taxation because the legislature had failed to adopt any rule or regulation governing the manner of determining the value of such property. Nevada had a constitutional provision similar to Art. XIII, Secs. 2 and 3, Utah State Constitution. The Nevada court in finding against this contention said, quoting from the case of *State* v. *Central Pac. R. Co.,* 10 Nev. 47, 63:

" 'No principal of valuation of property for purposes of taxation is prescribed by the laws of this state. The statutes define the different species of property, and provide that every species shall be assessed at its actual cash value. But as to the mode of ascertaining the cash value our law is silent. No subsidiary principles of valuation are laid down to guide the owner in making his statements in those cases where he is required to specify values; and the assessor is left equally unrestricted in making his estimates. It follows that owners and assessors must be guided by those general principles which everywhere determine the valuation of property, independently of statutory rules.' "

See also *Commercial Electric Light & Power Co.* v. *Judson,* 21 Wash. 49, 56 P. 829, 57 L. R. A. 78; *State* v. *Anderson,* 90 Wis. 550, 63 N. W. 746.

Our legislature has provided that all taxable property shall be assessed at its full cash value, Sec. 80- ■

5-1, R. S. U. 1933, which is defined in Sec. 80-3-1 (5) as meaning

"* * * the amount at which the property would be taken in payment of a just debt due from a solvent debtor";

it has provided that the state tax commission assess the property of car companies, Sec. 80-5-3; it has provided for uniform rates of levies, Secs. 80-9-1 to 80-9-9; it has provided for the equalization of the valuation of taxable property, Sec. 80-5-47. These provisions are sufficient to carry out the constitutional mandate that the legislature shall prescribe by law such regulations as will secure a just valuation for taxation of property. If these provisions are followed all property will bear an equal burden of taxation in proportion to its value.

Plaintiffs in their suit for a declaratory judgment had asked the court to find that if the assessments on their cars were valid, that neverthless, the commission was limited by the provisions of Sec. 104-2-24.10, U. C. A. 1943, which provides that an action for a liability created by the statutes of this state shall be commenced in three years. The court held that the state was not limited by a statute of limitations, and plaintiffs cite this holding as error.

There can be no doubt that if the tax commission had commenced an action to collect these taxes that Sec. 104-2-24.10 would have applied, since Sec. 104-2-31, U. C. A. 1943 provides that:

"The limitations prescribed in this article shall apply to actions brought in the name of or for the benefit of the state in the same manner as to actions by private parties."

This court has held that these provisions apply to taxes. See *In re Swan's Estate*, 95 Utah 408, 79 P. 2d 999; *Attorney General of Utah* v. *Pomeroy*, 93 Utah 426, 73 P. 2d 1277, 114 A. L. R. 726; *State Tax Commission* v. *Spanish Fork City*, 99 Utah 177, 100 P. 2d 575, 131 A. L. R. 816. However, unless the seizure of this car for the purpose of sale, under

section 80-10-29, U. C. A. 1943, by the tax commission was "an action" as that term is used in section 104-2-24.10, the commission has not brought nor is it attempting to maintain an action in this case and it is not barred by that section. In *Crismon* v. *Reich*, 2 Utah 111, we held that in the absence of an express statutory provision to that effect the county assessor may not bring an action to collect taxes but is limited to the summary proceedings provided by statute for that purpose. It is immaterial here whether or not the tax commission may bring a separate action to collect this tax. Our problem is whether or not the proceeding to seize and sell one of the cars of one of the plaintiffs which the tax commission is attempting constitutes an action. If so, then such proceeding is barred by section 104-2-24.10—otherwise it is not barred.

Sec. 104-2-47, U. C. A. 1943, defines the word "action" as used in the chapter on "Limitation of Actions" "as including a special proceeding of a civil nature." Such a proceeding is not defined by our statutes but from the cases cited in Words and Phrases, Perm. Ed., Vol. 39, commencing page 692, it apparently applies to proceedings in courts of justice or quasi-judicial bodies in which the rights of the parties thereto are determined, but which proceedings were not known as common law actions or proceedings in equity. The summary proceedings under Sec. 80-10-29, do not determine any rights or liabilities of the parties, those were determined in the assessment proceedings. Therefore, Sec. 104-2-24.10 does not bar these proceedings.

Section 80-10-1, U. C. A. 1943, provides that:

"Every tax has the effect of a judgment against the person, * * *."
A money judgment against the person, without the aid of an execution and without docketing the same in the county clerk's judgment docket, is not a lien against either the real or personal property of the judgment debtor. For effect of judgments in the district court see 104-30-15, in City Court, Sec. 20-4-20, in Justice Court, 104-75-30, in Federal Court,

52-5-1, U. C. A. 1943. To the effect that a general tax levied against personal property does not create a lien on either the property assessed or other personal property of the owner thereof. See *Taylor Motor Car Company* v. *Salt Lake County,* 74 Utah 594, 281 P. 49. Section 80-10-2, U. C. A. 1943, expressly provides that:

"Every tax upon personal property is a lien upon the real property of the owner thereof,  *  *  *."

This clearly indicates that the purpose of the above quoted provision of section 80-10-1, was not to create a lien on the real property of the owner of the assessed personal property. Sec. 80-10-1, is the first section in the chapter on "Collection of Taxes." Its purpose undoubtedly had to do with the means, manner and time of making such collection. It expressly provided that every tax has the effect of a judgment against the person, which indicated that every tax should be collected by the same means, in the same manner and within the same time as a judgment, unless otherwise expressly provided. This chapter expressly provides for collection of a tax against personal property, in a summary proceeding through seizure and sale of the personal property of the delinquent. For collection by county assessor, see Sec. 80-10-5, by county treasurer, see Sec. 80-10-47, and by tax commission see Sec. 80-10-29, U. C. A. 1943.

Sec. 104-37-1, U. C. A. 1943, provides for the issuance of an execution for the enforcement of a judgment at any time within eight years from entry, and section 104-37-6, U. C. A. 1943, provides for the execution of a judgment in certain cases after the expiration of the eight year period. In *Youngdale* v. *Burton,* 102 Utah 169, 128 P. 2d 1053, 1054, we held that under these sections that within eight years "some form of proceeding in execution for collection" of a judgment might be instituted, but in case of a judgment for the recovery of money such proceeding in execution may not be had after the expiration of that period. This tax, being for the recovery of money, has the effect of a judgment for that purpose, the summary

proceedings provided for its collection is a form of execution for its enforcement, therefore under the above authority such proceeding may not be instituted after the expiration of the eight year period from the time the Tax Commision is empowered to enforce collection of the tax, to wit: Nov. 30th, as provided in sections 80-10-25, 26 and 27, U. C. A. 1943.

Plaintiffs further contend that the assessments of their cars were fraudulent per se because in their valuation no account was taken of their diverse ages but all were given the same valuation per car. We are not impressed with this argument in view of the fact that plaintiffs ▮ ▮ at no time before they commenced this action protested the valuation placed on their cars, as provided for in Sec. 80-7-12, U. C. A. 1943. Had any of the plaintiffs been of the opinion that their cars were being over-valuated they had an opportunity under this section to apply to the commission within the time allowed, to have the valuations corrected and they would have been entitled to a hearing of the matter. This they did not do. In our opinion the fact that cars of diverse ages were assessed at the same value is not sufficient evidence from which it must be inferred that the assessment was either arbitrarily or fraudulently made. This court is committed to the view that in the absence of fraud or bad faith on the part of the assessor, his valuation is conclusive unless changed by the Board of Equalization on application of the taxpayer, and that this remedy which the legislature had provided for the taxpayer is exclusive unless willfulness, arbitrariness, fraud or bad faith can be clearly shown. See *Home Fire Ins. Co.* v. *Lynch*, 19 Utah 189, 56 P. 681; *Nutter* v. *Carbon County*, 58 Utah 1, 196 P. 1009; Cooley on Taxation, 4th Edition, Vol. 3, Section 1201.

Remanded with instructions to proceed in accordance with this opinion. Each party to bear its own costs.

PRATT, J., concurs.

LARSON, Chief Justice (concurring in part and dissenting in part.)

I concur in the opinion of Mr. Justice WADE, except as to the statement, based upon the case of *Crismon* v. *Reich,* 2 Utah 111, 40 Pac. St. Rep. p. 111, to the effect that an action cannot be maintained by the taxing units to recover taxes on personal property, which taxes are not attached to real estate. Since the Crismon case there have been so many changes in our statutes, in tax theory, in tax procedures, and in the concept of tax liability, that I think the statement in the Crismon case no longer controlling. I see no reason why an action may not lie for unpaid taxes on personal property where the summary proceeding of seizure under the tax laws is not practicable.

McDONOUGH, Justice (concurring in part and dissenting in part).

I concur in the opinion of Mr. Justice WADE except as to the holding that Sec. 104-37-1 applies to debts due for taxes assessed by the State Tax Commission. As to that holding I concur in the dissent of Mr. Justice WOLFE.

WOLFE, Justice (concurring in part and dissenting in part).

In my own order, I note my agreement and disagreement with the holdings on the propositions discussed in the main opinion. I shall first take up those propositions which, if found for plaintiffs, would dispose of the whole matter and make it unnecessary to go further into secondary defenses.

First: That the 1933 statute was never intended to apply to cars of the plaintiffs which are leased to railroad companies and operated by them. I agree with the conclusion of the main opinion that the statute made it the duty of the tax commission to assess the cars of plaintiffs if they attained a situs in this state for purposes of taxation and when operated in more than one county. And this is the case whether the cars are operated by the company which owns them or by a company which leases them or operates them under some other arrangement.

I concur in the interpretation made in the main opinion of the clause "operated as a unit in more than one county." It must be admitted that the matter was awkwardly phrased by the legislature but to give the clause any other meaning would play havoc with the real intent and purpose of the legislature as revealed by the act.

As to the next contention that in order that the plaintiffs' rolling stock attain a tax situs in Utah, the legislature and not the commission *must* prescribe a just formula for ascertaining the average number of plaintiffs' cars in Utah. I agree with the conclusion and the reasoning of Mr. Justice WADE in this regard.

In the case of *State ex rel. Public Service Commission et al. v. Southern Pacific Co., et al.*, 95 Utah 84, 79 P. 2d 25, 43, in a concurring opinion, I concluded that Art. 13, Sec. 11, of our Constitution which gave the tax commission power and imposed on it the duty to *assess* mines and public utilities was not intended to preclude the legislature from providing a method or formula by which to ascertain value of public utilities stating that any formula provided by the legislature or the tax commission must be reasonably appropriate for finding the value in money. The formula would be reasonably appropriate so long as it did not

"exclude every element which in common practice, and by the common experience of mankind, is used to arrive at a judgment of money value or value in money."

I still believe that the constitution meant to reserve to the legislature the power to prescribe appropriate formulæ for ascertaining the value of public utilities and, a fortiori, of other property which the constitution did not specifically make the tax commission the assessor. The main opinion in the Southern Pacific case distinctly recognized the power of the tax commission to take all steps including the prescription of methods and formulæ for ascertaining value as well as the application of them in the total process of assessment of utilities. The concurring opinion simply attempted to reserve also to the legislature power to prescribe formula

for ascertaining valuation of utilities and held that the tax commission did not have *sole* power to prescribe the method or formula. But Art. 13, Sec. 11 of the Constitution, as amended on November 4, 1930, provided that the legislature could give the tax commission "powers of original assessment" of other property, a power which the legislature would have had even though not expressly mentioned in the constitutional amendment. I think when the legislature gave the tax commission the power to assess the property of car companies it carried with it the power to prescribe constitutional methods of ascertaining the value of migratory property which had a taxable situs in Utah. When the legislature gave the tax commission the power to assess originally property of car and transportation companies, such power carried with it the same authority to devise constitutional and appropriate methods of ascertaining the valuation of such property as did the powers given by the constitution to the tax commission in the case of utilities although, according to my thinking, the legislature if it desired could have prescribed the method or formula to be used.

From what I have said above, it is apparent that I concur in the holding that it does not take legislative action to determine average presence[1] (a better term might be proportional presence) in Utah.

---

[1] "Average presence" is somewhat annalogous to a bank's average daily deposits which it is free to loan to its customers subject to specified reserves. The "average" is the amount which, if left in the banks continuously every day over a period would, if multiplied by the days in the given period, equal the total of actual daily deposits left in the bank during that period. Where a certain number of cars of a car or transportation company come into Utah, although their home is elsewhere during a taxable year, each for a varying number of days, a formula which would reasonably substitute for those actual car days, the cars which would have to be here continuously during the taxable year in order to make the same total car days would then be treating the company as if it had allocated to Utah during the whole of the taxable year the number of cars resulting from the formula and Utah would be the taxable situs of that number of cars.

The remainder of the process of assessment might perhaps be to find an average value of these cars and simply multiply the number of the cars of each plaintiff's cars allocated to Utah as found by the above formula by such value. But, however that was done, as stated in the main opinion, it was evidently not timely objected to by the plaintiffs. Furthermore, I agree that the fact that all cars were assessed the same is no basis to conclude that the assessment was arbitrarily made because the uniform figure aimed at might be the value of the average car which, of course, would take into account the diverse ages, styles and value of individual cars.

To conclude on this phase of the case, I agree with the holding of the main opinion that there was statutory authority for the *tax commission* to assess the property of car and transportation companies after the 1933 revision of our code. (I shall later touch on the matter of whether this property was taxable for the years of 1931, 1932 and 1933) ; that it was unnecessary for the legislature to prescribe a regulation for ascertaining whether cars of such companies had a taxable situs in Utah or a formula for valuing such cars.

I agree that the plaintiff companies are not public utilities. But it is quite probable, as pointed out by the tax commission, that the 1931 legislature intended to include them within the term "public utilities" as that term was used in Chap. 53, Laws of 1931. The history of the legislation preceding 1931 and related statutes in reference to the taxation of the rolling stock of car companies reveals that the legislature at times used the term "public utilities" in a nontechnical sense, sometimes excluding from its scope properties which were undoubtedly public utilities and placing them in a group separate from other public utilities. In the Revision of 1933 (Section 80-5-3) it placed some unquestioned public utilities in the same classification as car companies. In fact the legislature seemed more concerned in 1931 in regrouping properties, whether technically utilities or not which were by the 1917 complied laws only assessable by the State Board

of Equalization if they were operated inter-county, so that some of that group regardless of whether they were operated inter-county would be assessed by the newly created tax commission. Others of the group were not to be assessed by the tax commission unless they were inter-county. Considering the 1931 statute as a whole and reading it in connection with related statutes and previous history of taxation of car companies, there is much to persuade one to the view that the 1931 legislature used the term "public utilities" in amending Sec. 5873 as a short way of extracting out of Sec. 5873, C. L. U. 1917 (which made

"all property and franchises owned by railroads, street railroads, *car*, telegraph and telephone, electric light, pipe line, power canal irrigating, and express companies operated in more than one county of this state"

assessable by the State Board of Equalization) certain of the items named therein, to wit:

"railroads, street railroads, *car*, telegraph and telephone, electric light, * * * and express companies"

to be assessable by the new tax commission regardless of whether or not they were operated inter-county and leaving pipe line, power, canal and irrigation companies to be assessable by the tax commission only when operated inter-county. I find, as does the tax commission, difficulty in ascribing any reason why the 1931 legislature, in the light of the practice for 55 years of having a central authority tax the property of car companies and in view of the recommendations made by the legislative appointed tax study committee, and by the governor in his message, and by the state's taxing officials, should single out the rolling stock of car companies and leave that to be taxed by the various local tax assessors. Hence I am inclined to disagree with the holding of the main opinion that Chap. 53 of Laws of 1931 did not impose on the tax commission the duty to assess the rolling stock of car companies during the period from March 24,

1931, to June 26, 1933. But if, as the main opinion holds, the eight year statute of limitations applying to judgments applies to the collection of taxes, I cannot see that we need be concerned with the above question. And this leads me to consider the matter of the Statutes of Limitations as applied to tax procedure.

I agree with the holding of the main opinion that a tax liability is a liability created by statute and hence any action to collect it, if any such exists, must be brought within three years of the attaching of the liability. I also agree that Sec. 104-2-47, U. C. A. 1943, does not apply to any but actions of a judicial or quasi-judicial nature; that is, actions in the courts or before quasi-judicial bodies such as the Industrial Commission where a tribunal has the duty to pronounce on evidence adduced or presented to it, that one party is liable or obligated to another. To denote a proceeding provided for by statute for the collection of taxes where no adjudication by a judicial or quasi-judicial body was involved as an "action" would be giving to that word as it has been judicially used a meaning at variance with the concepts implied both by our sections dealing with the limitation of actions and the jurisprudential concept with which it has become invested in the law over the centuries. Moreover, I think it might lead to grave consequences in our whole tax system. Many of the proceedings by tax officials for the assessment, levy and collection of taxes are so defective as not to give valid support to a tax deed, yet the tax liability of the owner may subsist from January of the taxable year. If such is the case, what would prevent the tax debtor from taking refuge in the three year statute (which up to a few years ago was only one year) by asserting that everything necessary to collect the liability must be done within the three years because any proceedings for the collection of the tax liability such as sale for delinquency, etc., is an "action." And since Sec. 104-2-31 provides that limitations run against an action for the benefit of the state, the state is barred because no "action" had been taken within the three year period—all of the tax procedure for collection

having been invalid and nugatory. Whether such argument is tenable or not, I do not think the procedure provided for collecting a tax from car companies by seizure and sale can by any stretch of the imagination be denominated an "action" as meant by the statutes pertaining to the limitations of actions.

But what about the eight year statute which pertains to the issuance of writs of execution on judgments—Sec. 104-37-1, U. C. A. 1943? I am quite sympathetic to the view of the plaintiffs that there should be some period after which the tax debtor could repose from fear of tax collections. Some of our taxing laws such as the sales tax act have such periods within which assessment or other tax proceeding must be had as a condition for the collection of the tax. But our tax statute providing for ad valorum taxes on real and personal property do not contain any general provision for bringing an action for the tax and thus obtaining a judicial judgment for it although there was at one time in our statutes provision for suit (Sections 6047, 6090-6092, Compiled Laws of Utah, 1917) and there is now provision for the court foreclosure on real estate under certain circumstances (Sections 80-10-41 to 46, U. C. A. 1943), and for suit to collect taxes on livestock in special circumstances (Section 80-5-27, U. C. A. 1943).

Section 80-10-1, U. C. A. 1943, provides that every tax shall have the effect of a judgment against the delinquent tax debtor. I presume this means every tax validly assessed and levied. But a statute which gives a validly assessed and levied tax the effect of a judicial judgment does not mean that the statute of limitations which applies to court judgments applies to such tax obligation. A statute which after a certain time bars the collection of a judgment of a judicial or perhaps of a quasi-judicial tribunal is not an "effect" of a judgment. A tax obligation which is given the effect of a judgment is not a judgment as that term is used. It cannot be sued on in another state. The effect of a judgment is that it is a final determination of amount and nature of the obligation imposed and that it is a lien against the

judgment debtor's real estate in the county where docketed. But the execution given by Section 104-37-1, U. C. A. 1943, is applicable only to judicial judgments and not to taxes which under Sec. 80-10-1 have

"the effect of a judgment against the person."

In order to follow the reasoning through, we should start with Sec. 80-10-1, U. C. A. 1943, reading in part:

"Every tax has the effect of a judgment * * * and every lien created by this title has the force and effect of an execution duly levied against all personal property of the delinquent * * *."

Applying this provision, the tax levied against the car company then has the effect of a judgment. One of the effects of a judgment is that it is a lien on the real estate of the judgment debtor in the county where docketed. But if there is no real estate there is no lien for these personal property taxes to attach and consequently since there is no lien for these taxes they have not the force and effect of an execution duly levied against the personal property of the delinquent. The execution is provided for in Sec. 80-10-29.

It is argued in the prevailing opinion that since this tax has the effect of a judgment, one of the effects which it has is enunciated in Sec. 104-37-1, U. C. A. 1943, which allows, for a period of eight years after date of entry of a judgment, a writ of execution to issue. I think that at this point the opinion falls into error. Sec. 104-37-1 pertains to judicial judgments and not taxes which have the effect of a judgment. In other words, the taxing authority may not sue out a writ of execution as one may in the case of a judicial judgment and hand it to the sheriff, have him levy under Sec. 104-37-1, give notice under Section 104-37-18 for not less than five nor more than ten days and then sell. There are not two types of execution on rolling stock provided— one under Sec. 80-10-29 and one under Chap. 37 of Title 104. The first is the only type of execution provided for.

I do not think a legislative pronouncement that a tax shall have the *effect* of a judgment means the same thing as saying that it *shall be* a judicial judgment which can only be obtained by starting a court action.

In order to obtain the type of execution provided for in Sec. 104-37-1, the matter on which judgment is obtained must go through judicial channels. According to the case of *Crismon* v. *Reich,* 2 Utah 111, cited in the prevailing opinion,

"when ample powers and means are afforded by statute for the collection of taxes without suit, and when there is no statute providing for suit to be brought for taxes, no action can be maintained therefor."

And since there is no statutory provision for obtaining a judgment for taxes in a case like this a judicial judgment cannot be had. Consequently, there is no way in which to obtain a judgment which would make the type of execution provided for in Chap. 37 of Title 104 applicable. Hence the eight years limitation which is part of Sec. 104-37-1 does **not apply.**

This does not mean that the tax commission is limited to a seizure and sale of the very cars assessed. Section 80-10-29 specifies that

"the provisions of law governing the seizure and sale by county treasurers of personal property for delinquent taxes shall apply to sales made by the state tax commission under this section * * *."

One of those provisions is Sec. 80-10-47 reading:

"The treasurer may collect the taxes deliquent on personal property, except when sufficient real estate is liable therefor, by seizure and sale of *any* personal property owned by the delinquent * * *."

The argument of the plaintiffs in regard to a statutory repose from collection of taxes should be addressed to the legislature.

I regret that I cannot concur in this part of the main opinion. But with the other parts of the opinion I concur, reserving from that concurrence agreement with the holding that the property of car companies was not assessable

by the tax commission during the period from March 24, 1931, to June 20, 1933. As to that matter, I have considerable doubt but a doubt which under the holding of the main opinion that tax obligations are, after eight years, barred from collection I need not resolve.